In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-01-00006-CR


______________________________




JOSEPH S. BONNER, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 202nd Judicial District Court


Bowie County, Texas


Trial Court No. 95F0245-202




 




Before Cornelius, C.J., Grant and Ross, JJ.


Opinion by Justice Ross



O P I N I O N



 Joseph S. Bonner appeals the revocation of his community supervision in each of
four cases. In 1988, Bonner pled guilty to felony driving while intoxicated (DWI). The trial
court sentenced him to five years' imprisonment, but suspended the imposition of his
sentence and placed him on five years' community supervision. In 1992, Bonner was
indicted for two other felony DWI offenses. The State also filed a motion to revoke
Bonner's community supervision for the 1988 conviction. The trial court did not hear these
cases until 1995, when Bonner was indicted for a fourth felony DWI offense.

 Bonner pled guilty to the two 1992 felony DWI offenses and to the 1995 felony DWI
offense. The trial court sentenced him to five years' imprisonment for each offense. The
trial court also revoked Bonner's community supervision in the 1988 conviction and
sentenced him to five years' imprisonment. All sentences were ordered to run
concurrently. However, five months later, the trial court placed Bonner on five years'
"shock probation" in each case.

 In 2000, the State again moved to revoke Bonner's community supervision, alleging
he committed five violations of its terms. Specifically, the State alleged (1) that Bonner
operated a vehicle without an ignition interlock device installed on the vehicle, (2) that he
failed to report to the community supervision department as directed, (3) that he failed to
pay his supervision fees for five months, (4) that he consumed alcohol, and (5) that he
failed to report to a supervision officer and take Anabuse over a ten-day period. (1) 

 Bonner pled true to two of the State's allegations. The trial court found three of the
allegations true, revoked Bonner's community supervision in all four cases, and ordered
the execution of the remainder of his sentences.

 This opinion addresses the revocation of Bonner's community supervision for the
1995 felony DWI offense, trial cause number 95F0245-202, for which he was convicted in
1995. Bonner has also appealed the revocation of his community supervision in each of
the other cases. We address those appeals in separate opinions.

 The record shows Bonner was arrested for DWI on April 15, 2000. Officer Joe
Rochelle testified he encountered Bonner's vehicle around 10:30 p.m. He testified the car
was traveling "halfway on the road and halfway off the road." He turned and followed for
"several moments" and saw the car "weav[e] back and forth" and move "over on top of the
white fog line several times, almost off the road several times . . . ."

 Rochelle testified Bonner "staggered as he walked towards" Rochelle after exiting
his vehicle. He also noticed an odor of an alcoholic beverage on Bonner's breath and that
his eyes were "glassy and bloodshot." Rochelle testified Bonner admitted he had been
drinking. 

 Rochelle administered field sobriety tests, including the horizontal gaze nystagmus
(HGN), the one-legged stand, and the heel-to-toe walk. Rochelle testified that, based on
those tests, he concluded Bonner was intoxicated. A videotape of the field sobriety test
was introduced into evidence at trial. 

 Bonner did not dispute he told Rochelle he had "a couple of beers" that night, but
testified they were nonalcoholic beers. He testified he failed to report to his community
supervision officer as directed on the date alleged in the State's motion to revoke his
community supervision. He also admitted the truck he was driving was not equipped with
an ignition interlock device. He further admitted he was aware he was required to take
Anabuse on the dates alleged in the State's motion to revoke his community supervision,
but failed to take the Anabuse on those dates. 

 Bonner first contends the trial court erred in admitting the videotape, which was an
edited copy of the original, when the original videotape was available. Rochelle testified
(1) that he recognized the videotape as the video taken during the traffic stop and the
interview; (2) that he listened to and watched the videotape; (3) that it was recorded on a
device capable of making an accurate recording; (4) that the device was operated by an
individual who is competent to operate the equipment; (5) that the videotape is an accurate
copy of the conversations that took place; (6) that the pictures contained on the videotape
are fair and accurate representations of the events that took place; (7) that he is able to
identify all the voices on the videotape; and (8) that it had not been altered in any manner. 

 Bonner then asked Rochelle the following on voir dire:

 Q. Officer Rochelle, is this the original?


 A. No, sir. It's a copy.


 Q. Where's the original?


 A. The original's out in my car.


 Q. Okay. Why is the original not being produced?


 A. Because in situations like this, we make a copy and give [it] to
the [district attorney's] office and we keep the original in our locker, locked
up.


 [Defense Counsel]: Objection, Your Honor. Not the best
evidence.


The prosecutor then asked whether the videotape was an exact copy of the original. 
Rochelle responded it was. The trial court overruled Bonner's objection. Bonner further
questioned Rochelle on voir dire but made no additional objections. The videotape was
admitted into evidence and published to the court. 

 Later, on cross-examination, Rochelle testified Bonner did not tell him the truck
Bonner was driving veered because it was having mechanical problems. Bonner then
asked:

 Q. Well, are any of those conversations on tape?


 A. The whole traffic stop itself, from the point where I initiated my
turning on my lights to my pulling into the Bi-State [Justice Building] . . . is on
the original tape.


 Q. Okay. But it's not on this tape?


 A. No, sir.


 [Defense Counsel]: Once again, Your Honor, then we renew
our objection to the admissibility of State's Exhibit Two since obviously it's
been edited, it's been altered, and it's not complete.


 . . . .


 THE COURT: Alright. I am going to overrule that
objection . . . because I think it was admitted only to that portion that we saw. 
And if there's some additional part and there's a desire to admit it on the part
of the State or the defendant, certainly we'll entertain that.


 We review a trial court's decision to admit or exclude evidence under an abuse of
discretion standard. Salazar v. State, 38 S.W.3d 141, 153-54 (Tex. Crim. App.), cert.
denied, ___ U.S. ___, 122 S.Ct. 127, 151 L.Ed.2d 82 (2001). To prove the content of a
writing, recording, or photograph, the original writing, recording, or photograph is required
except as otherwise provided by the Texas Rules of Evidence or by other law. Tex. R.
Evid. 1002.

 However, a duplicate is admissible to the same extent as an original unless (1) a
question is raised as to the authenticity of the original, or (2) in the circumstances it would
be unfair to admit the duplicate in lieu of the original. Tex. R. Evid. 1003. A duplicate is
a counterpart produced, among other ways, by mechanical or electronic re-recording. Tex.
R. Evid. 1001(d).

 Rule 901 governs the authentication of recordings. Angleton v. State, 971 S.W.2d
65, 69 (Tex. Crim. App. 1998). Under Rule 901(a), the requirement of authentication or
identification as a condition precedent to admissibility is satisfied by evidence sufficient to
support a finding that the matter in question is what its proponent claims. Tex. R. Evid.
901(a). For instance, testimony of a witness with knowledge that a matter is what it is
claimed to be can be sufficient to authenticate evidence. Tex. R. Evid. 901(b)(1). Also,
identification of a voice, whether heard firsthand or through mechanical or electronic
transmission or recording, by opinion based on hearing the voice at any time under
circumstances connecting it with the alleged speaker, can also be sufficient to authenticate
evidence. Tex. R. Evid. 901(b)(5).

 In the present case, Bonner did not object to the authenticity of the videotape before
its introduction into evidence; rather, he objected merely that it was a copy and not the
original. Therefore, any issue regarding its authenticity is waived. Tex. R. App. P. 33.1.

 Further, his second objection to the videotape was not an objection to the
authenticity of the original, which under Rule 1003 is one way to challenge the admissibility
of a duplicate. Tex. R. Evid. 1003. Even if Bonner had raised an objection to the
authenticity of the videotape, Rochelle's testimony is sufficient to establish its authenticity. 
Rochelle testified that he was the person who made the videotape, that he reviewed it, that
he was able to identify the voices on the videotape, that it was a fair and accurate
representation of the events and conversations, and that it was an exact copy of the
original.

 Though on cross-examination after the videotape had been published to the trial
court, Bonner established there were matters on the original videotape not contained on
the copy, this fact does not affect the videotape's admissibility. Bonner does not allege the
portions shown to the trial court were not accurate representations of those portions of his
encounter with Rochelle. Rather, he maintains those portions did not show the complete
encounter.

 When a party introduces a writing or recorded statement, or a part of a writing or
recorded statement, an adverse party may at that time introduce any other part or any
other writing or recorded statement that should, in fairness, be considered
contemporaneously with it. Tex. R. Evid. 106. In the present case, the trial court offered
Bonner the opportunity to introduce the missing portions of the original videotape, but
Bonner declined.

 Nevertheless, even if the trial court erred in admitting the videotape, the error was
harmless. Nonconstitutional error is harmless when it does not affect the defendant's
substantial rights. Tex. R. App. P. 44.2(b). A substantial right is affected when the error
had a substantial and injurious effect or influence on the jury's verdict. King v. State, 953
S.W.2d 266, 271 (Tex. Crim. App. 1997). Reversal is not required if, after reviewing the
record as a whole, the appellate court has a fair assurance the error did not influence the
jury's verdict or had only a slight effect. Johnson v. State, 967 S.W.2d 410, 417 (Tex.
Crim. App. 1998).

 In the present case, the trial court found the allegation Bonner failed to abstain from
alcohol not true. Therefore, the videotape, which revealed evidence of Bonner's
intoxication and his admission to drinking that night, did not serve as the basis for the
revocation of his community supervision. Even if it had, the videotape was largely
cumulative of Rochelle's testimony that Bonner appeared intoxicated and that Bonner
admitted having "a couple of beers" that night.

 Further, the issue in this case was the revocation of Bonner's community
supervision. The decision to revoke community supervision is within the trial court's
discretion. Wester v. State, 542 S.W.2d 403, 405 (Tex. Crim. App. 1976); Allen v. State,
946 S.W.2d 115, 116 (Tex. App.Texarkana 1997, no pet.). We review the trial court's
ruling for abuse of discretion. See Jackson v. State, 645 S.W.2d 303, 305 (Tex. Crim.
App. 1983); Lopez v. State, 46 S.W.3d 476, 482 (Tex. App.-Fort Worth 2001, pet. ref'd).

 The trial court cannot revoke community supervision without a showing the
defendant violated a condition of community supervision. DeGay v. State, 741 S.W.2d
445, 449 (Tex. Crim. App. 1987); Allen, 946 S.W.2d at 116. When there is sufficient
evidence to support a finding the defendant violated a condition of supervision, the trial
court does not abuse its discretion by revoking community supervision. See Cardona v.
State, 665 S.W.2d 492, 493-94 (Tex. Crim. App. 1984); Stevens v. State, 900 S.W.2d 348,
351 (Tex. App.-Texarkana 1995, pet. ref'd). Proof of a single violation is sufficient to
support revocation of community supervision. O'Neal v. State, 623 S.W.2d 660, 661 (Tex.
Crim. App. 1981); Myers v. State, 780 S.W.2d 441, 445 (Tex. App.Texarkana 1989, pet.
ref'd).

 Bonner admitted he drove a vehicle that was not equipped with an ignition interlock
device and admitted he failed to report to the community supervision department as
directed. In fact, Bonner pled true to these allegations. Therefore, the trial court did not
abuse its discretion in revoking his community supervision, even if it did err in admitting the
videotape.

 Bonner also contends he was not required to take Anabuse on the days he was
alleged to have failed to take it. The basis of his contention is his belief that, in the 1995
order placing him on "shock probation," he was only ordered to take Anabuse for one year. 
However, the order in question required him to take Anabuse daily. 

 Nevertheless, the record shows the trial court modified the terms of his community
supervision in 1999, requiring him to "report daily to his probation officer . . . to take
Anabuse for a period of one year." The record also shows the State alleged Bonner failed
to take Anabuse on dates within one year of the modified order. Further, Bonner admitted
he was aware of the requirement that he take Anabuse daily, and the record shows he
appeared regularly at the community supervision office to take Anabuse except on the
days alleged in the State's motion to revoke his community supervision.

 In any event, any error is harmless, as Bonner admitted he drove a vehicle not
equipped with an ignition interlock device and admitted he failed to report to the community
supervision department as directed. As mentioned previously, proof of these violations is
a sufficient basis, in and of itself, for the trial court to revoke Bonner's community
supervision.

 We affirm the judgment.


 Donald R. Ross

 Justice


Date Submitted: March 12, 2002

Date Decided: March 19, 2002


Do Not Publish


1. Anabuse is a drug that causes violent naseau and vomiting if the person ingests
alcohol.


 2 4 3 2 4;
 mso-font-charset:0;
 mso-generic-font-family:swiss;
 mso-font-pitch:variable;
 mso-font-signature:-1610611985 1073750139 0 0 159 0;}
@font-face
 {font-family:Tahoma;
 panose-1:2 11 6 4 3 5 4 4 2 4;
 mso-font-charset:0;
 mso-generic-font-family:swiss;
 mso-font-format:other;
 mso-font-pitch:variable;
 mso-font-signature:3 0 0 0 1 0;}
 /* Style Definitions */
 p.MsoNormal, li.MsoNormal, div.MsoNormal
 {mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-parent:"";
 margin:0in;
 margin-bottom:.0001pt;
 mso-pagination:none;
 mso-layout-grid-align:none;
 text-autospace:none;
 font-size:12.0pt;
 font-family:"Times New Roman","serif";
 mso-fareast-font-family:"Times New Roman";
 mso-fareast-theme-font:minor-fareast;}
p.MsoFootnoteText, li.MsoFootnoteText, div.MsoFootnoteText
 {mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-link:"Footnote Text Char";
 margin:0in;
 margin-bottom:.0001pt;
 text-align:justify;
 text-justify:inter-ideograph;
 mso-pagination:widow-orphan;
 font-size:10.0pt;
 font-family:"Times New Roman","serif";
 mso-fareast-font-family:Calibri;
 mso-fareast-theme-font:minor-latin;}
p.MsoHeader, li.MsoHeader, div.MsoHeader
 {mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-link:"Header Char";
 margin:0in;
 margin-bottom:.0001pt;
 mso-pagination:none;
 tab-stops:center 3.25in right 6.5in;
 mso-layout-grid-align:none;
 text-autospace:none;
 font-size:12.0pt;
 font-family:"Times New Roman","serif";
 mso-fareast-font-family:"Times New Roman";
 mso-fareast-theme-font:minor-fareast;}
p.MsoFooter, li.MsoFooter, div.MsoFooter
 {mso-style-priority:99;
 mso-style-link:"Footer Char";
 margin:0in;
 margin-bottom:.0001pt;
 text-align:justify;
 text-justify:inter-ideograph;
 mso-pagination:widow-orphan;
 tab-stops:center 3.25in right 6.5in;
 font-size:12.0pt;
 font-family:"Times New Roman","serif";
 mso-fareast-font-family:Calibri;
 mso-fareast-theme-font:minor-latin;}
p.MsoAcetate, li.MsoAcetate, div.MsoAcetate
 {mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-link:"Balloon Text Char";
 margin:0in;
 margin-bottom:.0001pt;
 mso-pagination:none;
 mso-layout-grid-align:none;
 text-autospace:none;
 font-size:8.0pt;
 font-family:"Tahoma","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-fareast-theme-font:minor-fareast;
 mso-bidi-font-family:Tahoma;}
span.BalloonTextChar
 {mso-style-name:"Balloon Text Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Balloon Text";
 mso-ansi-font-size:8.0pt;
 mso-bidi-font-size:8.0pt;
 font-family:"Tahoma","sans-serif";
 mso-ascii-font-family:Tahoma;
 mso-hansi-font-family:Tahoma;
 mso-bidi-font-family:Tahoma;}
span.FooterChar
 {mso-style-name:"Footer Char";
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Footer;
 mso-ansi-font-size:12.0pt;
 mso-bidi-font-size:12.0pt;
 font-family:"Times New Roman","serif";
 mso-ascii-font-family:"Times New Roman";
 mso-fareast-font-family:Calibri;
 mso-fareast-theme-font:minor-latin;
 mso-hansi-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";}
span.FootnoteTextChar
 {mso-style-name:"Footnote Text Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Footnote Text";
 mso-ansi-font-size:10.0pt;
 mso-bidi-font-size:10.0pt;
 font-family:"Times New Roman","serif";
 mso-ascii-font-family:"Times New Roman";
 mso-fareast-font-family:Calibri;
 mso-fareast-theme-font:minor-latin;
 mso-hansi-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";}
span.HeaderChar
 {mso-style-name:"Header Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Header;
 mso-ansi-font-size:12.0pt;
 mso-bidi-font-size:12.0pt;
 font-family:"Times New Roman","serif";
 mso-ascii-font-family:"Times New Roman";
 mso-hansi-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";}
.MsoChpDefault
 {mso-style-type:export-only;
 mso-default-props:yes;
 mso-ascii-font-family:Calibri;
 mso-ascii-theme-font:minor-latin;
 mso-fareast-font-family:"Times New Roman";
 mso-fareast-theme-font:minor-fareast;
 mso-hansi-font-family:Calibri;
 mso-hansi-theme-font:minor-latin;
 mso-bidi-font-family:"Times New Roman";
 mso-bidi-theme-font:minor-bidi;}
.MsoPapDefault
 {mso-style-type:export-only;
 margin-bottom:10.0pt;
 line-height:115%;}
 /* Page Definitions */
 @page
 {mso-page-border-surround-header:no;
 mso-page-border-surround-footer:no;
 mso-footnote-separator:url("6-10-175-CR%20Edwards%20v.%20State%20Opinion%20mtd_files/header.htm") fs;
 mso-footnote-continuation-separator:url("6-10-175-CR%20Edwards%20v.%20State%20Opinion%20mtd_files/header.htm") fcs;
 mso-endnote-separator:url("6-10-175-CR%20Edwards%20v.%20State%20Opinion%20mtd_files/header.htm") es;
 mso-endnote-continuation-separator:url("6-10-175-CR%20Edwards%20v.%20State%20Opinion%20mtd_files/header.htm") ecs;}
@page WordSection1
 {size:8.5in 11.0in;
 margin:1.0in 1.0in 1.0in 1.0in;
 mso-header-margin:1.0in;
 mso-footer-margin:1.0in;
 mso-even-header:url("6-10-175-CR%20Edwards%20v.%20State%20Opinion%20mtd_files/header.htm") eh1;
 mso-header:url("6-10-175-CR%20Edwards%20v.%20State%20Opinion%20mtd_files/header.htm") h1;
 mso-even-footer:url("6-10-175-CR%20Edwards%20v.%20State%20Opinion%20mtd_files/header.htm") ef1;
 mso-footer:url("6-10-175-CR%20Edwards%20v.%20State%20Opinion%20mtd_files/header.htm") f1;
 mso-first-header:url("6-10-175-CR%20Edwards%20v.%20State%20Opinion%20mtd_files/header.htm") fh1;
 mso-first-footer:url("6-10-175-CR%20Edwards%20v.%20State%20Opinion%20mtd_files/header.htm") ff1;
 mso-paper-source:0;}
div.WordSection1
 {page:WordSection1;}
@page WordSection2
 {size:8.5in 11.0in;
 margin:2.0in 1.0in 1.0in 1.0in;
 mso-header-margin:2.0in;
 mso-footer-margin:1.0in;
 mso-even-header:url("6-10-175-CR%20Edwards%20v.%20State%20Opinion%20mtd_files/header.htm") eh1;
 mso-header:url("6-10-175-CR%20Edwards%20v.%20State%20Opinion%20mtd_files/header.htm") h1;
 mso-even-footer:url("6-10-175-CR%20Edwards%20v.%20State%20Opinion%20mtd_files/header.htm") ef1;
 mso-footer:url("6-10-175-CR%20Edwards%20v.%20State%20Opinion%20mtd_files/header.htm") f2;
 mso-first-header:url("6-10-175-CR%20Edwards%20v.%20State%20Opinion%20mtd_files/header.htm") fh1;
 mso-first-footer:url("6-10-175-CR%20Edwards%20v.%20State%20Opinion%20mtd_files/header.htm") ff1;
 mso-paper-source:0;}
div.WordSection2
 {page:WordSection2;}
-->











 
 
 
 
 
 
 




 

 

 

 

 

 

 

 

 

                                                         In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-10-00175-CR

                                                ______________________________

 

 

                                      JOHNNY EDWARDS,
Appellant

 

                                                                V.

 

                                     THE STATE OF TEXAS, Appellee

 

 

                                                                                                  


 

 

                                         On Appeal from the 3rd Judicial District Court

                                                          Anderson
County, Texas

                                                            Trial
Court No. 29656

 

                                                         
                                         

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                              Memorandum Opinion by Justice Carter








                                                      MEMORANDUM OPINION

 

            Johnny
Edwards, an inmate in the Texas Department of Corrections, appeals from his
conviction by a jury for assault of a public servant.[1]  The jury found alleged enhancements true, and
assessed his punishment at seventy-five years imprisonment, to run consecutive
to the conviction he is presently serving. 


            Edwards
attorney on appeal has filed a brief which discusses the record and reviews the
proceedings in detail.  Counsel has thus
provided a professional evaluation of the record demonstrating why, in effect,
there are no arguable grounds to be advanced. 
This meets the requirements of Anders
v. California, 386 U.S. 738 (1967); Stafford
v. State, 813 S.W.2d 503 (Tex. Crim. App. 1981); and High v. State, 573 S.W.2d 807 (Tex. Crim. App. [Panel Op.] 1978).

            Counsel
mailed a copy of the brief and a letter to Edwards on January 21, 2011,
informing Edwards of his right to file a pro se response and of his right to
review the record.  Counsel has also
filed a motion with this Court seeking to withdraw as counsel in this
appeal.  

            Edwards
filed a pro se response on April 21, 2011. 
In his sixty-two-page missive, he complains about perceived inequities,
improprieties in his prior convictions and their use as enhancements, about the
way that the Texas Department of Criminal Justice handles inmates and their
complaints, the use of force against him, alleged incompetence by his trial
counsel, and a plethora of other matters.

            We have
determined that this appeal is wholly frivolous.  We have independently reviewed the clerks
record and the reporters record, and find no genuinely arguable issue.  See Halbert
v. Michigan, 545 U.S. 605, 623 (2005). 
We, therefore, agree with counsels assessment that no arguable issues
support an appeal.  See Bledsoe v. State, 178 S.W.3d 824, 82627 (Tex. Crim. App.
2005).  

            We
affirm the judgment of the trial court.[2]

 

 

 

                                                                                    Jack Carter

                                                                                    Justice

 

Date Submitted:          May
12, 2011  

Date Decided:             May
19, 2011

 

Do Not Publish











[1]Originally
appealed to the Twelfth Court of Appeals, this case was transferred to this
Court by the Texas Supreme Court pursuant to its docket equalization
efforts.  See Tex. Govt Code Ann.
§ 73.001 (Vernon 2005).  We are unaware
of any conflict between precedent of the Twelfth Court of Appeals and that of
this Court on any relevant issue.  See Tex.
R. App. P. 41.3.





[2]Since
we agree this case presents no reversible error, we also, in accordance with Anders, grant counsels request to
withdraw from further representation of appellant in this case.  No substitute counsel will be appointed.  Should appellant wish to seek further review
of this case by the Texas Court of Criminal Appeals, appellant must either
retain an attorney to file a petition for discretionary review or appellant
must file a pro se petition for discretionary review.  Any petition for discretionary review must be
filed within thirty days from the date of either this opinion or the last
timely motion for rehearing that was overruled by this Court.  See
Tex. R. App. P. 68.2.  Any petition for discretionary review must be
filed with this Court, after which it will be forwarded to the Texas Court of
Criminal Appeals along with the rest of the filings in this case.  See
Tex. R. App. P. 68.3.  Any petition for discretionary review should
comply with the requirements of Rule 68 of the Texas Rules of Appellate
Procedure.  See Tex. R. App. P.
68.