Avery Owen DeGAY, Appellant,

v.

The STATE of Texas, Appellee.

No. 767–86.

Court of Criminal Appeals of Texas, En Banc.

Dec. 2, 1987.

Dennis Powell, Orange, for appellant.

Stephen C. Howard, Co. Atty. and David P. Bosserman, Asst. Co. Atty., Orange, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

ONION, Presiding Judge.

These proceedings involve an appeal from an order revoking probation.

Appellant entered a plea of guilty in a bench trial to a felony theft indictment on May 22, 1985. Punishment was assessed by the court at six years' imprisonment and a fine of $1,000.00. The imposition of the sentence was suspended and the defendant was placed on probation for six years under, inter alia, Article 42.12, § 6e(a), V.A.C. C.P., requiring appellant to serve 12 months in a restitution center.

Among the conditions of probation are found "(n) Remain under custodial supervision in a community-based facility; namely: Jefferson County Restitution Center; obey

all rules and regulations of such facility and pay a percentage of his income, $7.00 per day to the facility for room and board. Probationer is to remain in such facility for (12) twelve months." Other conditions imposed were:

"(h) Pay a Fine of $1,000.00; pay Restitution of $ –0–; pay Court Costs of $172.00; pay a Probation Fee of $15.00 each month, pay Court Appointed Attorney fee of $ –0– [1] in monthly installments of $35.00, beginning June 22, 1985.

"(i) Support all dependents.

\* \* \* \* \* \*

"(y) Pay a Pre–Sentence Investigation Report fee of $43.00 to Orange County Probation Department by July 22, 1985.

"(z) Pay a $20.00 Crimestopper Fee to the Orange County Probation Department by June 22, 1985."

In another instrument entitled "Restitution Center Supplement to Conditions of Probation" are found other conditions. Among these were:

"(3) Obey all rules and regulations of the Restitution Center.

"(4) Pay $7.00 per day of your income to the Restitution Center for room and board.

"(5) Pay a portion of your salary as determined by Restitution Center *to your dependents* for their support while you are under Restitution Center custodial supervision.

"(6) Pay necessary travel expense to and from work and community-service projects and other incidental expenses you may incur." (Emphasis supplied.)

At the time appellant was placed on probation the trial court expressly called appellant's attention to the conditions that he was to support his dependents, pay his fine, court costs, probation fee, presentence report fee, and crime stoppers fee and to the $7.00 a day room and board fee, etc. The trial court explained that appellant was able to work and support his family and that if he violated any condition he would be sent to the penitentiary.

---

**1.** This apparently was a clerical mistake.

On July 12, 1985, the State filed a motion to revoke probation alleging appellant had violated said condition (n) by (a) failing to obey the rules of the restitution center, to-wit: "Prohibited act # 116, refusing to obey an order of any staff member" by failing to turn over his entire check to the Director of the Restitution Center "as ordered by Joseph F. Delahoussaye, Restitution Center Probation Officer on 5/24/85," in that appellant failed to turn in checks on May 31, 1985, June 7, 14, 21 and July 5, 1985; (b) by failing to make arrangements for his own transportation as ordered by Delahoussaye "on 6/27/85"; (c) by violating "Prohibited act # 125, Being in an unauthorized area by going to his wife's address on May 31, 1985, June 7, 14 and 21, 1985 and July 5, 1985 without permission of restitution staff and (d) by violating Prohibited act # 136—Unauthorized contacts with the public" to-wit, his wife, without permission on the same dates alleged above.

On September 13, 1985, after a hearing, the court revoked probation, finding only that appellant had violated condition (n) by failing to turn his entire check over to the Director of the Restitution Center on the single date of July 5, 1985, as ordered by Probation Officer Delahoussaye.

On appeal appellant complained the trial court abused its discretion in revoking probation in that (a) there was a fatal variance between the violation alleged and the evidence; (b) that the alleged violated condition of probation was an unlawful delegation of authority by the court; and (c) that the alleged staff order violated was confusing, self-contradictory and contrary to other court-imposed conditions, rendering compliance therewith impossible.

The Beaumont Court of Appeals affirmed the judgment below. *DeGay v. State*, 711 S.W.2d 419 (Tex.App.—Beaumont 1986). That court found that the condition of probation requiring appellant to obey rules and regulations of the restitution center was not an improper delegation to the restitution center to specify terms and conditions of probation and that probation was properly revoked for appellant's single failure to deliver his entire paycheck to the restitution center as ordered by the staff of the center. Chief Justice Dies, in a strongly-worded dissent disagreed, pointing out what he considered to be conflicts with decisions of this Court. This Court granted appellant's petition for discretionary review to determine the correctness of the decision of the Court of Appeals. See Tex. Crim.App.R., Rule 302(c)(3).

At the revocation hearing the State called Joseph Delahoussaye, Restitution Center Probation Officer, and rested after his testimony. Appellant called the Director of the Restitution Center, Ted Franklin Strahan, and also testified in his own behalf.

From the evidence developed, we learn that appellant arrived at the restitution center on May 24, 1985. Appellant stipulated that he got a copy of the rules and regulations of the restitution center, and Delahoussaye testified they included "Prohibited Act 116—Refusing to obey an order of any staff member"; "Prohibited Act No. 125—Being in an unauthorized area" and "Prohibited Act No. 136—unauthorized contacts with the public."

The record showed that appellant worked at the Sabine Propeller and Marine Services in Port Arthur making $5.40 an hour, "which for the Center is a good amount of money, which is why we let him stay at the job," according to Strahan, the Director. Strahan also testified that he told appellant on the first day at the center that he (appellant) could keep his paycheck, but bring payments for room and board and transportation to the restitution center, and that he (appellant) could keep the rest and give to his family, his wife and three children. Strahan stated, "He was supposed to give it to them himself" and that it didn't surprise him to learn that appellant "dropped it off" at the wife's apartment as that was the way he figured it would work.

Probation Officer Delahoussaye testified that at the time of "intake" appellant was told he would have to get a car or arrange his transportation to and from his employment in Port Arthur, and that he indicated he would within approximately two weeks; that it was costing the restitution center

$18.00 a day for his transportation and that the center was only charging $1.00 a day as it did for other inmates working in Beaumont; that after three or four weeks that appellant seemed to lose interest in acquiring a vehicle and began to claim that with family expenses, etc., he could not afford financially to purchase and operate a car. Delahoussaye indicated that appellant's transportation was costly to the center, and that he thought that appellant's estimates of family expenses, rent, utilities, past due bills,[2] etc., were excessive and never verified. Delahoussaye concluded appellant could buy a car if appellant's wife was on welfare, and he contacted the welfare office. He was told the wife would qualify if she stopped receiving support from the appellant. Delahoussaye talked to the appellant about not giving any money to his family so the wife would qualify for welfare payments, telling him that this "would certainly be better than if he was incarcerated in T.D.C."

Delahoussaye testified that, apparently after being told to do so by Strahan, he orally instructed appellant to turn his entire paycheck over to the restitution center. He couldn't remember the exact date but he thought it was approximately June 14, 1985, but he was not sure. He testified that the alleged violations of his order on May 31st, June 7th and June 14th were therefore incorrect. He recalled that appellant told him that he had a different agreement with Strahan but that following his order appellant had turned his next paycheck over to the restitution center which may have been June 28th and acknowledged that none of this money was ever distributed to appellant's wife. He stated that on June 27th he ordered appellant to get transportation to his job arranged by July 5th. On July 5th appellant did not turn over his paycheck as ordered, and on that very date the center terminated appellant's transportation to his job, resulting in appellant losing his job. On July 8th, three days later, Delahoussaye wrote a

report to the trial court stating that appellant was not making significant progress in the restitution center's program. The revocation motion followed.

Delahoussaye admitted that appellant had worked, and there were only minor disciplinary infractions such as when appellant once refused to take medication.

Strahan, the director, testified that appellant was not a financial asset to the restitution center as it was costing the center $18.00 a day for transportation, and that was a big concern for him, as director, and caused him "to start looking deeper into the subject matter." He felt that estimates of expenses given by the wife didn't "jive" with appellant's estimates, and he suspicioned that appellant was not giving the wife the money he claimed or that the money was not needed at the home. Strahan testified he instructed Delahoussaye to tell appellant to turn over his paycheck to the center contrary to his earlier instruction to appellant. He could not remember when that occurred, but it was "about a month after he (appellant) got there" (June 24, 1985). He knew that appellant turned in his very next check (about $200) and that the wife called only two days later saying she was being evicted, which he did not believe and which caused his "trust relationship" to start on the down slide. He acknowledged that in June 1985, the appellant had paid the restitution center over $400.00 and that it did not surprise him that the wife and three children, without other sources of income, had difficulty living on the amount given them by appellant after the restitution center deduction.

Strahan stated that appellant had worked and tried to support his family, had engaged in no criminal activity and there had been no fighting with the staff.

The appellant testified that upon entering the restitution center it was his understanding from Director Strahan that he was to cash his paycheck and pay the restitution center its due and to give the rest to

2. On cross-examination the record reveals:
"Q. You found it surprising that this family would owe money when he had a family of five living on Eight Hundred Dollars and the

Restitution Center was taking theirs off the top?
"A. That wasn't my concern."

his wife and three children; that it was his understanding it was "okay" to take the money to his wife; that no one told him differently; that the court and center knew he was a truck driver for his employer and made deliveries and that he "dropped it off to her during very short intervals" or had a co-worker take the money to his wife. He was the sole support for his family. Appellant also related that when orally told by Delahoussaye to turn in his entire paycheck to the center, he wrote to Strahan, who had given him contrary instructions, asking him what to do. He stated that he did turn in his next paycheck to the center, but his family received no money therefrom, and on July 5th he did not turn in his paycheck because "basically" his family needed the money.

The trial court revoked probation solely on violation of condition (n) in that on July 5, 1985, appellant violated the order given him by Delahoussaye to surrender his entire paycheck to the restitution center.

■ In a probation revocation hearing the discretion to either continue the defendant on probation or to revoke probation rests in the discretion of the trial judge. *Wester v. State*, 542 S.W.2d 403, 405 (Tex. Cr.App.1976), and cases there cited.

The trial judge, however, is not accorded absolute discretion in the decision to revoke probation. *Scamardo v. State*, 517 S.W.2d 293 (Tex.Cr.App.1974); *Battle v. State*, 571 S.W.2d 20 (Tex.Cr.App.1978). While there is no right to either the court's or the jury's grace, probation, once granted, should not be arbitrarily withdrawn by the court and the court is not authorized to revoke without a showing that the probationer has violated a condition of his probation imposed by the court. See *Wozencraft v. State*, 388 S.W.2d 426 (Tex.Cr.App.1965); *Campbell v. State*, 456 S.W.2d 918 (Tex.Cr. App.1970); *Jackson v. State*, 464 S.W.2d 153 (Tex.Cr.App.1971); *Butler v. State*, 486 S.W.2d 331 (Tex.Cr.App.1972); *Wester v. State*, supra; *Bradley v. State*, 564 S.W.2d

727 (Tex.Cr.App.1978). An order revoking probation must be based on a condition of probation imposed by the court or on a condition as modified by the court. *Pequeno v. State*, 710 S.W.2d 709 (Tex.App.— Houston [1st] 1986).

It should be borne in mind that it is well established that the relationship between the court and the probationer is contractual in nature. *Bradley v. State*, 564 S.W.2d 727 (Tex.Cr.App.1978); *Espinoza v. State*, 486 S.W.2d 315 (Tex.Cr.App.1972); *McDonald v. State*, 442 S.W.2d 386 (Tex.Cr. App.1969). See also *Vanderburg v. State*, 681 S.W.2d 713 (Tex.App.—Houston [14th] 1984, Rev. ref'd).

Article 42.12, § 5(a), V.A.C.C.P., provides, inter alia, that *"Only* the court in which the defendant was tried may grant probation, may *fix or alter conditions*, revoke the probation,...."* (Emphasis supplied.) And § 6(a) provides, in part: *"The court* having jurisdiction of the case *shall determine the terms* and *conditions of probation* and *may*, at any time, during the period of probation *alter or modify the conditions;* provided, however, that the clerk of the court shall furnish a copy of such terms and conditions to the probationer, and shall note the date of delivery of such copy on the docket...."* (Emphasis supplied.)

■ It is also well established that a trial court cannot delegate its duty and responsibility for determining the conditions of probation to the probation officer or anyone else. *Jones v. State*, 571 S.W.2d 191, 193 (Tex.Cr.App.1978); *Salmons v. State*, 571 S.W.2d 29, 30 (Tex.Cr.App.1978); *Smith v. State*, 527 S.W.2d 896, 897 (Tex. Cr.App.1975); *Parsons v. State*, 513 S.W. 2d 554 (Tex.Cr.App.1974); *Brown v. State*, 508 S.W.2d 366 (Tex.Cr.App.1974); *DeLeon v. State*, 466 S.W.2d 573 (Tex.Cr.App.1971); *Cox v. State*, 445 S.W.2d 200 (Tex.Cr.App. 1969);[3] *McDonald v. State*, 442 S.W.2d 386 (Tex.Cr.App.1969).

---

**3.** "Such unauthorized delegation of authority permitted the probation officer not only to determine a condition of probation but also authorized him to alter or modify the condition from time to time as he deemed desirable without the approval of the court. A probation officer has no authority to alter conditions of probation. * * * Only the court having jurisdiction of the

Article 42.12, § 6(b), provides that if the court granting probation requires the defendant to serve a probationary term in a restitution center "the court shall require as a condition of probation that the defendant secure employment *and obey all rules and regulations of the center.*" (Emphasis supplied.) And earlier a similar condition of probation was held not to be an impermissible delegation of judicial powers. *Salmons v. State,* 571 S.W.2d 29 (Tex.Cr. App.1978).

In *Salmons,* supra, this Court stated:

"Although such a condition of probation vests in the treatment facility a certain degree of discretion with regard to the conduct of the probationer while a resident therein, such discretion is necessary if the facility is to be successful in its rehabilitative efforts. *Furthermore, there is a clear distinction between rules imposed by a custodial treatment facility in furtherance of its rehabilitative function and the conditions of probation.*"

 The condition that appellant obey all rules and regulations of the restitution center was a statutorily required one and was not itself an unlawful delegation of authority. However, the rules and regulations of a restitution center cannot be utilized, as in the instant case, by a director of a restitution center or a probation officer to fix or alter or modify conditions of probation [4] by either oral or written instructions.[5] Only the trial court may amend the conditions of probation. Article 42.12, § 5(a), supra. The trial court abused its discretion in revoking probation, given the circumstances of this particular case.

Here there was a single violation of an oral order of a probation officer who instructed the appellant to change his manner of payments and to turn his entire check over to the restitution center. This order countermanded an earlier oral order to the appellant by the director of the restitution center to the contrary. The probation officer's oral order was also inconsistent with some of the conditions of probation [6] and if obeyed would deprive appellant of the means of complying with court-imposed conditions of probation. While some confusion in the testimony exists as to dates, it is undisputed that appellant, after the oral order, surrendered his next paycheck to the center. His wife and three children received no money therefrom, and because of their need and his court-imposed condition to support his dependents, appellant did not turn in his next check.[7] On the very day of his first violation of the oral instruction of the probation officer, appellant's transportation to his job was cancelled and he lost his job. Three days later the probation officer reported to the trial court that appellant "had not significantly progressed towards compliance with court ordered conditions of probation...." and the revocation followed.

 The central issue to be determined in reviewing a trial court's exercise of discretion in a probation revocation case is whether the probationer was afforded due process of law. *Cardona v. State,* 665 S.W.2d 492 (Tex.Cr.App.1984). Appellant was not here accorded due process. *Caddell v. State,* 605 S.W.2d 275, 277 (Tex.Cr. App.1980); *Cardona v. State,* supra.

---

case shall determine, fix, alter or modify the conditions of probation." *Cox,* supra, at 202 (Onion, J., concurring).

4. Actually § 6e(g) of Article 42.12, supra, provides that the employer of a probationer under a restitution center program "shall" deliver the probationer's salary to the restitution center director. Said section also provides what action the restitution center director must take with regard to the distribution of probationer's salary. Neither the original oral instruction of the director to the appellant as to his paycheck or the subsequent oral order of the probation officer countermanding the earlier order and giving new instructions complied with said § 6e(g).

5. Due process requires specificity and that adequate notice of the terms of probation be contained in the *court's* written order. *Harris v. State,* 608 S.W.2d 229, 230 (Tex.Cr.App.1980).

6. These conditions are earlier set out in this opinion.

7. Appellant was also obligated to pay other amounts by virtue of conditions imposed by the court.

The judgments of the Court of Appeals and the trial court are reversed and the cause is remanded to the trial court.