In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-01-00230-CR


______________________________




FRANK WILLIAM WADE, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 124th Judicial District Court


Gregg County, Texas


Trial Court No. 022415-B




 




Before Morriss, C.J., Grant and Ross, JJ.


Opinion by Chief Justice Morriss



O P I N I O N



 Frank William Wade pled guilty to possession of marihuana in an amount greater than four
ounces, but less than five pounds. On April 27, 1995, the trial court sentenced him to eight years'
imprisonment, but suspended the imposition of his sentence and placed him on eight years'
community supervision.

 On March 4, 1996, the State moved to have the trial court revoke Wade's community
supervision, alleging he violated eight of its terms. On March 1, 1996, the trial court signed an order
for Wade's arrest. A capias was issued on March 6, 1996. The capias was executed on October 2,
2001, after Wade was arrested in Arkansas.

 On October 18, 2001, the State filed an amended motion to revoke Wade's supervision. At
a hearing on November 5, 2001, Wade pled not true to the allegations contained in the motion to
revoke. The trial court found the allegations true, revoked Wade's community supervision, and
sentenced him to eight years' imprisonment.

 On appeal, Wade contends he was denied his right to a speedy revocation hearing under the
United States and Texas Constitutions because the State did not use due diligence in bringing him
to trial. He also contends the evidence was legally and factually insufficient to revoke his
community supervision.

 In its amended motion to revoke Wade's community supervision, the State alleged that, from
December 1995 through October 2001, Wade failed (1) to report to his supervision officer; (2) to
maintain  his  residence  in  Shelby County, Tennessee; (3) to pay a $25.00 per month supervision
fee; (4) to pay court costs of $124.00 at the rate of $10.00 per month; (5) to pay his court-appointed
attorney $275.00 at the rate of $10.00 per month; (6) to pay a fine of $500.00 at the rate of $10.00
per month; (7) to inform his supervision officer in advance of any change of residence; and (8) to
perform four hours of community service per month.

 Melinda Hieber, Wade's supervision officer from April 1995 to July 2000, testified Wade
had not completed any community service since he was placed on community supervision. She
testified that during the same period $330.00 had been received by the community supervision office
on Wade's outstanding debt (i.e., court costs, supervision fees, court-appointed attorney costs, and
fines) of $2,659.50. She further testified to the following credits applied during the same period: 
(1) $80.00, credited against the amount owed for court costs, (2) $50.00, credited for court-appointed
attorney costs; and (3) $50.00, credited for his fine. 

 Hieber also testified she received notice from Wade in July 1995 that he was in jail in
Tennessee on another charge. She sent report forms to the jail, but the forms were returned because
Wade had been released in late July 1995. She testified she sent a letter to his address in Memphis,
Tennessee, but did not receive a response. In April 1996, she received a report showing Wade was
in jail in Arkansas. 

 Benji Rodgers, Wade's supervision officer after July 2000, testified he has not received any
payment for Wade's court costs, fine, court-appointed attorney costs, or supervision fees. He also
testified he had not received notice that Wade completed any community service. He further
testified he did not receive notice that Wade was changing his residence in Tennessee. 

 Wade testified he was imprisoned in Tennessee four days after returning there from Gregg
County, Texas. He testified he was in jail four to six months in Tennessee and was then extradited
to Arkansas. He was incarcerated three or four months in Arkansas on another charge. He was
released from jail in Arkansas in the middle of 1996. He lived in Arkansas until he was arrested and
returned to Gregg County.

Speedy Trial


 Wade first contends he was denied his right to a speedy revocation hearing under the United
States and Texas Constitutions because the State did not use due diligence in bringing him to trial. 
We disagree.

 The right to a speedy trial guaranteed by the Constitutions of the United States and Texas is
applicable to probation revocation proceedings. Carney v. State, 573 S.W.2d 24, 26 (Tex. Crim.
App. 1978). Whether an accused has been denied the right to a speedy trial is determined with
reference to the balancing test outlined in Barker v. Wingo, 407 U.S. 514, 530, 92 S.Ct. 2182, 33
L.Ed.2d 101, 117 (1972), using factors such as (1) the length of the delay; (2) the reason for the
delay; (3) the defendant's assertion of his speedy trial right; and (4) the prejudice to the defendant
resulting from the delay. Carney, 573 S.W.3d at 26-27.

 Wade did not raise the speedy trial issue in the trial court, but contends the issue was raised
per se by the length of the delay. In Barker, the United States Supreme Court held that whether the
defendant asserted the right to a speedy trial is one factor to be considered in evaluating whether he
or she was denied the right to a speedy trial. Barker, 407 U.S. at 528.

 There is a division of authority concerning whether a defendant can raise a speedy trial claim
for the first time on appeal. Some courts have considered the appellant's speedy trial claim though
the defendant did not raise the claim in the trial court. See Easley v. State, 564 S.W.2d 742, 745
(Tex. Crim. App. 1978) (appellant asserted his speedy trial rights for the first time over a year after
his trial); Ross v. State, 523 S.W.2d 402, 404 (Tex. Crim. App. 1975); Archie v. State, 511 S.W.2d
942, 943 (Tex. Crim. App. 1974); McKinney v. State, 505 S.W.2d 536, 542 (Tex. Crim. App. 1974). 
None of these cases, however, reversed the defendant's conviction. But see Hardesty v. State, 738
S.W.2d 9, 10 (Tex. App.-Dallas 1987, pet. ref'd) (court of appeals reversed defendant's conviction
even though he only raised statutory speedy trial rights in the trial court).

 Other courts have refused to consider a speedy trial claim that was not asserted in the trial
court. See Mulder v. State, 707 S.W.2d 908, 914 (Tex. Crim. App. 1986); Fraire v. State, 588
S.W.2d 789 (Tex. Crim. App. 1979); Oldham v. State, 5 S.W.3d 840, 846 (Tex. App.-Houston [14th
Dist.] 1999, pet. ref'd); Guevara v. State, 985 S.W.2d 590, 592 (Tex. App.-Houston [14th Dist.]
1999, no pet.); Ramirez v. State, 897 S.W.2d 428, 431 (Tex. App.-El Paso 1995, no pet.); Serna v.
State, 882 S.W.2d 885, 889-90 (Tex. App.-Corpus Christi 1994, no pet.); Jones v. State, 740 S.W.2d
497, 498 (Tex. App.-Dallas 1987, pet. ref'd); Vasquez v. State, 694 S.W.2d 56, 57 (Tex.
App.-Corpus Christi 1985, pet. ref'd); Taylor v. State, 666 S.W.2d 157, 159 (Tex. App.-Houston
[14th Dist.] 1983, pet. ref'd). We note this line of cases is led by the more recent rulings on the
subject from the Texas Court of Criminal Appeals.

 The few cases considering an appellant's speedy trial claim for the first time on appeal have
done so because of the Barker language that assertion or failure to assert a speedy trial claim is only
one factor to be considered in determining whether the defendant has been denied a speedy trial. See
Barker, 407 U.S. at 528. The United States Supreme Court in Barker was faced not with an
appellant who was asserting his speedy trial claim for the first time on appeal, but one who had
delayed until trial the assertion of his speedy trial right. The Barker opinion discussed and rejected
the previously expressed principle that "a defendant waives any consideration of his right to speedy
trial for any period prior to which he has not demanded a trial." See id. at 525. There is no
indication the Barker court intended to abrogate the long-standing rule requiring a defendant to
object at trial in order to preserve the issue on appeal.

 We believe the better rule, i.e., issue is waived unless raised at or prior to trial, is in line with
the more recent results from the Texas Court of Criminal Appeals and is not inconsistent with
Barker. The factors outlined in Barker cannot be fully evaluated on appeal unless a full record is
developed on the question. In Newcomb v. State, 547 S.W.2d 37, 37 (Tex. Crim. App. 1977), the
trial court held a revocation hearing about seven months after the motion to revoke was filed. The
defendant did not assert a speedy trial claim in the trial court, but on appeal contended his speedy
trial rights were violated as a matter of law. Id. at 38. The Texas Court of Criminal Appeals, noting
that the appellant did not raise a Barker v. Wingo issue either in the trial court or on appeal, wrote:

 We decline to address the issue sua sponte and thereby also decline to establish
precedent for considering unassigned Barker v. Wingo error in every case where
there has been a delay of the duration shown in this case. If we were to consider this
issue, which by nature of the applicable balancing test requires a full development
of the facts, on our own motion, it would be necessary to abate the case for a full
hearing on the matter. We could not render a considered judgment on the matter
without a fully developed record, and this is particularly so where, as here, the parties
never made it an issue, did not present evidence on the matter, and would have been
utterly without notice, prior to judgment in this Court, that a binding judgment
between the parties would be entered on the matter. We are not saying that we would
order a hearing if the issue were asserted without prior development in the record, but
only that no judgment on the merits of the issue sua sponte should be entered without
an evidentiary hearing first.


Id.

 In the present case, Wade questions specifically why he was not held on the Gregg County
warrant in Arkansas after his release from jail in 1996. He contends the reason is "most likely" due
to the State's failure to disseminate the warrant to the law enforcement community in other
jurisdictions. This is precisely the type of issue that would have been developed had he raised his
speedy trial claim in the trial court. Having failed to do so, we believe Wade he has waived
consideration of the issue on appeal.

 Even in the absence of that waiver, we are unwilling to reverse based on the speedy trial
issue. We so conclude because an evaluation of the Barker factors does not reveal Wade's right to
a speedy trial was violated, even assuming the State's failure to apprehend him upon his release from
jail in Arkansas was blameworthy in some respect.

 True, the revocation hearing was held five years and eight months after the motion to revoke
was filed. During all but approximately one month of that delay, however, Wade was free or was
confined for other charges unrelated to the current matters. Even if the State was blameworthy in
failing to apprehend Wade when he was released from prison in Arkansas in mid 1996,
approximately five years and three months of the additional delay was due in large part to the fact
that Wade had failed in his duty to report his location to the authorities in Gregg County. 

 In addition, Wade not only failed to assert the speedy trial right until now, but also "laid low"
during most of the delay, ignoring his duties under his community supervision. Finally, the record
from the revocation hearing does not show any prejudice to Wade by the length of time between the
filing of the motion to revoke and the revocation hearing (a deficiency directly related to his failure
to object in the trial court). In fact, there is some indication Wade did not turn himself in or request
a revocation hearing precisely because he did not want to return to jail. Wade apparently preferred
the status quo. From the record developed at the revocation hearing we detect no violation of Wade's
right to a speedy trial.

Sufficiency of Evidence


 Wade next contends the evidence is legally and factually insufficient to support the
revocation of his community supervision. The decision whether to continue or revoke community
supervision is within the trial court's discretion. Wester v. State, 542 S.W.2d 403, 405 (Tex. Crim.
App. 1976); Allen v. State, 946 S.W.2d 115, 116 (Tex. App.Texarkana 1997, no pet.). We review
the trial court's ruling for abuse of discretion. See Jackson v. State, 645 S.W.2d 303, 305 (Tex. Crim.
App. 1983); Lopez v. State, 46 S.W.3d 476, 481 (Tex. App.-Fort Worth 2001, pet. ref'd).

 The trial court cannot revoke community supervision without a showing the defendant
violated a condition of his or her supervision. DeGay v. State, 741 S.W.2d 445, 449 (Tex. Crim.
App. 1987); Allen, 946 S.W.2d at 116. When there is sufficient evidence to support a finding the
defendant violated a condition of his or her supervision, the trial court does not abuse its discretion
by revoking community supervision. See Cardona v. State, 665 S.W.2d 492, 493-94 (Tex. Crim.
App. 1984); Stevens v. State, 900 S.W.2d 348, 351 (Tex. App.-Texarkana 1995, pet. ref'd). Proof
of a single violation is sufficient to support revocation of community supervision. O'Neal v. State,
623 S.W.2d 660, 661 (Tex. Crim. App. 1981); Myers v. State, 780 S.W.2d 441, 445 (Tex.
App.Texarkana 1989, pet. ref'd).

 In the present case, the evidence showed Wade failed to notify his supervision officer that
he was being extradited to Arkansas from Tennessee in 1996, that he was in jail in Arkansas in 1996,
or that he was living in Arkansas after 1996. Further, Wade admitted he did not pay his supervision
fees, fines, court costs, or court-appointed attorney costs, even after he was released from jail in
Arkansas in 1996. In fact, when asked whether there was any reason he could not pay these fees
between 1996 and 1999, Wade testified, "No, sir. I should have been paying." Proof of these
violations is sufficient to support the trial court's decision to revoke Wade's community supervision.

 The judgment is affirmed. 

 


 Josh R. Morriss, III

 Chief Justice


Date Submitted: July 5, 2002

Date Decided: July 11, 2002


Publish