

## NUMBER 13-11-00755-CR

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

**TONY DORSETT HILLE,**                                            **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                            **Appellee.**

### On appeal from the 156th District Court
### of Bee County, Texas.

### MEMORANDUM OPINION

### Before Chief Justice Valdez and Justices Garza and Vela
### Memorandum Opinion by Chief Justice Valdez

By two issues, appellant, Tony Dorsett Hille, challenges the revocation of his community supervision, arguing that: (1) the evidence was insufficient to support the revocation; and (2) the district court improperly delegated its judicial function in violation of appellant's rights to due process under the Fourteenth Amendment and his rights under article 42.12 of the Texas Code of Criminal Procedure. We reverse and remand.

## I. BACKGROUND

The State indicted appellant for possession of a controlled substance while in a correctional facility, enhanced by two prior felony convictions.[1]  Appellant pleaded guilty pursuant to a plea bargain.  The trial court assessed a ten-year sentence of confinement in the Texas Department of Criminal Justice-Institutional Division, suspended the sentence, placed appellant on community supervision for ten years, and assessed a fine of $500.[2]  The court determined that imposition of the following special condition was appropriate:

> The defendant is required to serve a term of confinement and treatment in a Substance Abuse Felony Punishment Facility [("SAFPF")] under this section for a term of not less than ninety (90) days or more than one (1) year, and upon successful completion of the program, the defendant is required to participate in a drug or alcohol abuse continuum of care treatment plan as developed by the Texas Commission on Alcohol and Drug Abuse, abiding by all rules and regulations of said treatment plan until discharged by the staff of the continuum of care program.[3]

On August 23, 2011, the State filed a motion to revoke community supervision,[4] alleging the following grounds for revocation:

> 1.      On or about the 5th day of August, 2011 in the County of Duval, State of Texas, the said [appellant] did then and there intentionally and knowingly fail to successfully complete the [SAFPF] program in violation of the Conditions of Community Supervision . . . .

---

[1] *See* TEX. PENAL CODE ANN. §§ 12.34 (West 2011) ("third degree felony punishment"), 12.42 (West Supp. 2011) ("penalties for repeat and habitual felony offenders on trial for first, second, and third degree felony"), 38.11(d)(1), (g) (West 2011) ("prohibited substances and items in correctional facility").

[2] *See* TEX. CODE CRIM. PROC. ANN. art. 42.12, § 3 (West Supp. 2011) ("judge ordered community supervision").

[3] *See* TEX. CODE CRIM. PROC. ANN. art. 42.12, § 14 (West Supp. 2011) ("substance abuse felony program").

[4] *See* TEX. CODE CRIM. PROC. ANN. art. 42.12, §§ 21 (West Supp. 2011) ("violation of community supervision: detention and hearing"), 22 ("continuation or modification"), 23 ("revocation").

2

2.      On or about the 5th day of August, 2011 in the County of Duval, State of Texas, the said [appellant] did then and there intentionally and knowingly violate the rules and regulations of the [SAFP facility], to wit: on the aforesaid date, in the aforesaid County and State, the said [appellant] attempted to establish an inappropriate relationship with a staff member, in violation of the Conditions of Community Supervision.

Appellant pleaded "not true" to the allegations. At the hearing, Keane Monroe, the SAFPF program coordinator for the probation department of the 156th Judicial District, testified in support of the State's motion. Monroe began working with appellant as a probation officer shortly after appellant was placed on probation. Appellant entered the SAFPF program on June 27, 2011. Appellant did not successfully complete the SAFPF program. He was unsuccessfully discharged on August 5, 2011 due to allegations that he attempted to begin a relationship with a counselor or staff member.[5] Specifically, it was alleged that appellant took a note pad from a SAFPF counselor and wrote "A ring!! LMAO, LOL" and "find a husband thats 8100% hood & nigga." SAFPF staff construed this note as an attempt to begin a relationship and discharged appellant on that basis.

On cross-examination, Monroe testified that he did not review the SAFPF program requirements with appellant or meet with appellant to discuss probation or the SAFPF program. He did not consider that to be a part of his duties in supervising him. After the allegations were made by SAFPF, Monroe conducted a "team meeting" by telephone, and the "team" decided unanimously to "discharge" appellant from the SAFPF program.

---

[5] Counsel for appellant objected to Monroe's testimony, arguing: "He has no actual knowledge of that, and I will not be able to cross him on that." The objection was overruled.

3

The State offered no evidence that appellant knew or had reason to know any of the rules or regulations of the SAFP facility. There was no evidence that appellant ever received a copy of the rules and regulations of the SAFP facility, nor was there any evidence that the rules and regulations were ever explained to appellant or discussed with him. Finally, the State offered no evidence that the rules and regulations of the SAFP facility prohibited the passing of notes to counselors such as the one at issue in this case.

On the State's request, the court took judicial notice of the notice of the judgment of conviction and the order containing the terms and conditions of probation as well as appellant's signatures on those documents. On re-direct examination by the State, Monroe testified that his office follows a general procedure with a probationer before a probationer signs the conditions of probation: "An officer reads the conditions of probation to—each of the conditions to the defendant and then the defendant is given a chance to ask any questions and the defendant signs and he is served at the district clerk's office with a copy." Monroe further testified that there was nothing in his file to reflect that this procedure was not followed in appellant's case.

After the State made its argument to the Court, counsel for appellant argued the following:

> Judge, the testimony has been very vague. We have heard from the probation officer who was not at the SAFPF unit who doesn't have any actual knowledge of what happened there. The allegations are very specific. Yes, we know that [appellant] did not complete a program because he is here today. The allegation states that it was intentional and knowingly that he did not complete the program.
>
> In addition, this allegation that he attempted to establish an inappropriate relationship with a staff member, Mr. Monroe read it from a report. I wasn't able to cross-examine anyone who has actual knowledge of that.

4

There is no evidence that this was an intentional act by my client. There is no evidence . . . that this is what he did. There is just a probation officer reading a secondhand report from a SAFPF unit, and based on that we're going to ask that the Court find these allegations not true.

Based on the foregoing, the district court found the allegations in the State's motion to be true, and then proceeded to a disposition hearing. After hearing argument, the district court revoked appellant's community supervision and sentenced appellant to ten years' incarceration with a fine of $500. This appeal followed.

## II. DISCUSSION

By two issues, appellant contends that the trial court abused its discretion in revoking his community supervision because: (1) there was insufficient evidence to establish a violation of the terms of appellant's community supervision; and (2) the court improperly delegated the judicial function to a "team" of unknown membership that conducted its proceedings without a record and without any procedural guarantees of due process.

### A. Standard of Review

In a hearing to revoke probation, the discretion to either continue the defendant on probation or to revoke probation rests in the discretion of the trial judge. *See DeGay v. State*, 741 S.W.2d 445, 449 (Tex. Crim. App. 1987); *Cardona v. State*, 665 S.W.2d 492, 493 (Tex. Crim. App. 1984). The trial judge, however, is not accorded absolute discretion in the decision to revoke probation. *DeGay*, 741 S.W.2d at 449. While there is no right to either the court's or the jury's grace, probation, once granted, should not be arbitrarily withdrawn by the court and the court is not authorized to revoke without a

showing that the probationer has violated a condition of his probation imposed by the court. *Id.*

The issue of whether the defendant was afforded due process is the central issue to be determined in the appeal of a probation revocation decision. *See id.* at 450. The burden is on the State to prove by a preponderance of the evidence that the probationer has committed the breach or breaches alleged in the State's motion to revoke probation. *Caddell v. State*, 605 S.W.2d 275, 277 (Tex. Crim. App. 1980); *see also Rickels v. State*, 202 S.W.3d 759, 763 (Tex. Crim. App. 2006). The authority of the trial judge to revoke probation is limited by the allegations of which the probationer has due notice, those which are contained in the written motion to revoke filed during the term of the probationary period. *Caddell*, 605 S.W.2d at 277; *Zillender v. State*, 557 S.W.2d 515, 519 n.4 (Tex. Crim. App. 1977).

In determining questions regarding sufficiency of the evidence in probation revocation cases, the burden of proof is by a preponderance of the evidence. *Cardona*, 665 S.W.2d at 493. In other words, the burden of proof is met by "that greater weight of the credible evidence which would create a reasonable belief that the defendant has violated a condition of his probation." *See Rickels*, 202 S.W.3d at 764 (citing *Scamardo v. State*, 517 S.W.2d 293, 298 (Tex. Crim. App. 1974)).

In reviewing the legal sufficiency of the evidence to support the revocation, appellate courts review the evidence in the light most favorable to the judgment, giving deference to the trial court as the sole trier of facts, the credibility of the witnesses, and the weight to be given to the evidence presented. *Davila v. State*, 173 S.W.3d 195, 197 (Tex. App.—Corpus Christi 2005, no pet.). When the standard of review is abuse of

6

discretion, the record must simply contain some evidence to support the decision made by the trial court. *Id.*

Violation of a single condition of probation is sufficient to support revocation. *Gloria v. State*, 676 S.W.2d 194, 196 (Tex. App.—Corpus Christi 1984, no pet.) (citing *Sanchez v. State*, 603 S.W.2d 869 (Tex. Crim. App. 1980); *Jones v. State*, 571 S.W.2d 191 (Tex. Crim. App. 1978)). When the State has failed to meet its burden of proof, the trial judge abuses his discretion in issuing an order to revoke probation. *Cardona*, 665 S.W.2d at 493-94 (citing *Walkovak v. State*, 576 S.W. 2d 643 (Tex. Crim. App. 1979)).

**B. Analysis**

In his first issue, appellant argues that there was insufficient evidence to prove the State's grounds for revocation: (1) appellant "intentionally and knowingly fail[ed] to successfully complete the [SAFPF] program"; and (2) "intentionally and knowingly violate[d] the rules and regulations of the [SAFP facility], to wit: . . . [appellant] attempted to establish an inappropriate relationship with a staff member."

With regard to the first allegation, appellant argues that the State failed to prove that he acted intentionally and knowingly in failing to successfully complete the SAFPF program. The State maintains that there was a sufficient basis for the trial court to infer that he acted intentionally and knowingly. The State relies on the decision of the Texas Court of Criminal Appeals in *Salmons v. State*, 571 S.W.2d 29, 30 (Tex. Crim. App. 1978), a case in which the defendant, like the appellant in this case, was compelled to accept treatment for drug and alcohol addiction as a term of probation.

In *Salmons*, the evidence established that the defendant "left the foundation's treatment facility within a week of his arrival despite the efforts of the staff to convince

7

him to stay." *Id.* The State sought revocation of probation on the grounds that the defendant left treatment "without authorization from competent staff personnel and without approval of the Court." *Id.* at 30. At the hearing, the defendant did not dispute that he left treatment, and he also "refused the trial court's offer to continue his probation if he would agree to return to the foundation." *Id.* As a result, the trial court revoked the defendant's probation, and on appeal, the decision was upheld. *Id.*

A key distinction in this case is that there is no evidence that appellant intentionally or knowingly left the SAFP facility. The defendant in *Salmons* left treatment voluntarily, whereas appellant was compelled to leave. Another important distinction is that, unlike the defendant in *Salmons*, appellant was not offered the option of having his probation continued if he would agree to return to the SAFP facility. For these reasons, we conclude that the evidentiary record in this case does not contain the same proof of intentional and knowing conduct found in the *Salmons* decision.

We believe the facts in this case are more similar to the facts in *Gloria v. State*, 676 S.W.2d 194, 195 (Tex. App.—Corpus Christi 1984, no writ), where we affirmed the trial court's decision to revoke community supervision based on a violation of the condition that the "Defendant will remain in [the MH-MR] facility until he successfully completes the required program, and is released by the MH-MR staff." In *Gloria*, the defendant's probation officer testified that "the staff at the MH-MR Center telephoned him . . . and reported that, because of the [defendant's] 'rebellious behavior,' they could no longer keep him in the program." *Id.* at 196. The defendant's primary caseworker at the MH-MR facility testified that despite working with the defendant for three weeks, the

8

defendant "was unable to complete the program as required because he had difficulties in following the rules and in dealing with the supervisors or the staff." *Id.* at 197.

Although we find the factual circumstances of this case to be more similar to *Gloria*, the State did not allege the same grounds for revocation. In *Gloria*, the State's motion to revoke alleged "the defendant, Jesse Gloria, has failed to successfully complete the required program of the MH-MR Substance Abuse . . . in that he has been unsatisfactorily terminated by the MH-MR staff." *Id.* at 195-96. Unlike this case, where the State alleged that appellant acted "intentionally and knowingly" in failing to complete the SAFPF program, the allegation in *Gloria* was simply that the defendant failed to complete the required program and had been unsuccessfully discharged. Moreover, it was established that the defendant in *Gloria* was acting "rebellious," that he had knowledge of the rules and regulations and was intentionally not obeying them.

Here, the State gave notice to appellant that revocation was being sought based on allegations that appellant acted "intentionally and knowingly" in violating the terms of his community supervision. As noted above, the authority of the trial judge to revoke probation is limited by the allegations of which the probationer has due notice, meaning those which are contained in the written motion to revoke filed during the term of the probationary period. *See Caddell*, 605 S.W.2d at 277. Thus, the trial court's authority to revoke appellant's community supervision was limited by the allegation that appellant acted "intentionally and knowingly" in committing the violations alleged in the State's motion to revoke.[6]

---

[6] Thus, the absence of an allegation of intentional and knowing conduct in *Gloria* is an important distinction, suggesting different grounds for revocation in the two cases. *See Staten v. State*, 328 S.W.3d 901, 906 (Tex. App.—Beaumont 2010, no pet.) ("The allegations contained in a motion filed by the State

9

The State does not dispute that its burden was to prove that appellant acted "intentionally and knowingly." Rather, the State argues that it met the burden because the trial court could infer that appellant acted "intentionally and knowingly."

Intent may be inferred from circumstantial evidence such as acts, words, and the conduct of the appellant. *Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004); *see also Moore v. State*, 11 S.W.3d 495, 500 (Tex. App.—Houston [14th Dist.] 2000, no pet.) ("The requisite culpable mental state may be inferred from the actions or conduct of the defendant.").

The State argues that the trial court could infer that appellant acted "intentionally and knowingly" based on appellant's actions in taking a note pad from a SAFPF counselor and writing "A ring!! LMAO, LOL" and "find a husband thats 8100% hood & nigga." According to the State, this was an attempt to start a relationship with a staff member, a violation of the rules and regulations of the SAFP facility. This is also the second ground for revocation.

We will assume that the foregoing gave the trial court a sufficient evidentiary basis to find that appellant did, in fact, attempt to start a relationship with a staff member. The State's burden was to prove that appellant "intentionally and knowingly" failed to successfully complete the SAFPF program or "intentionally and knowingly" violated the rules and regulations of the SAFP facility. The terms "intentionally" and "knowingly" are defined by the Texas Penal Code as follows:

> A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.

to revoke the defendant's placement on community supervision operate to limit the trial court's authority because the trial court is required to revoke on the grounds which are alleged in the motion.").

> A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

TEX. PENAL CODE ANN. § 6.03(a)-(b) (West 2003).

Applying these definitions to the allegations in this case, it was the State's burden to prove that it was appellant's conscious objective or desire to engage in the conduct or cause the result of either: (1) not successfully completing the SAFPF program; or (2) violating the rules and regulations of the SAFP facility.[7]

The State did not meet its burden. It offered absolutely no evidence of what appellant knew or reasonably should have known. There is no evidence that appellant knew or should have known the rules and regulations of the SAFP facility. There is no evidence that appellant knew or should have known that attempting to start a relationship with a staff member was a violation of those rules and regulations. There is no evidence that appellant knew or should have known that his attempt to start a relationship would preclude him from successfully completing the SAFPF program.[8]

In other revocation cases involving allegations of intentional and knowing conduct, courts have upheld revocation decisions where there is evidence of intentional and knowing conduct or a reasonable basis to infer intentional and knowing conduct. *See Grammer v. State*, 294 S.W.3d 182, 191 n.11 (Tex. Crim. App. 2009) ("We believe

---

[7] To prove the lesser *mens rea* element of knowingly, the State would have to prove that appellant was aware that his conduct was reasonably certain to cause the result of either: (1) not successfully completing the SAFPF program; or (2) violating the rules and regulations of the SAFP facility.

[8] We note that while there should be "a clear distinction between rules imposed by a custodial treatment facility in furtherance of its rehabilitative function and the conditions of probation," the distinction is defeated where, as here, there is no evidence that appellant ever received the rules imposed by the facility and a single violation of the facility's rules is the sole basis for revoking community supervision. *See Salmons v. State*, 571 S.W.2d 29, 30 (Tex. Crim. App. 1978).

11

that the trial court could have reasonably found that appellant knew from the very beginning that associating with Turner was a violation of his probation . . . . The trial court could also have reasonably found that appellant was not serious about completing his probation, that he was intentionally violating his probation by associating with Turner, possibly to gain access to her 12-year-old daughter."); *Taylor v. State*, 592 S.W.2d 614, 616 (Tex. Crim. App. 1980) ("Appellant having definite and precise knowledge of the modified terms of his probation is not now in position to complain that the Clerk failed to discharge all of the duties placed upon him by law."); *Brooks v. State*, 153 S.W.3d 124, 129 (Tex. App.—Beaumont 2004, no pet.) ("We do note that, from the testimony of Mark Hogberg, the trial court could have inferred Brooks' failure to pay his fees was intentional by Brooks' failure to remain employed with one employer for very long, coupled with the evidence that Brooks made no payments for the entire year of 2002, and the first six months of 2003."); *see also Polanco v. State*, No. 01-97-01231-CR, 1998 Tex. App. LEXIS 7289, *7 (Tex. App.—Houston [1st Dist.] Nov. 19, 1998, no pet.) (memo. op., not designated for publication) ("This is not a situation where the conditions of probation were vague and unascertainable as claimed by appellant. Instead, it is a situation where appellant was informed of the rules and made conscious decisions to disregard them.").

Conversely, in cases where there is no evidence of the defendant's knowledge of what is required of him or where there is no evidence to prove the State's allegation of intentional noncompliance, the courts have reversed revocation decisions. *See In re J.M.*, 133 S.W.3d 721, 725 (Tex. App.—Corpus Christi 2003, no pet.) ("The State did not provide any evidence contradicting Ozuna's testimony about appellant's inability to

12

pay or showing that his failure to pay was intentional. The trial court did not have legally sufficient evidence on which to exercise its discretion."); *see also Brown v. State*, 354 S.W.3d 518, 520 (Tex. App.—Fort Worth 2011, pet. ref'd) ("The State must also prove that the probationer's failure to pay was intentional. The State offered no evidence to show nor did it argue that Appellant was able to pay her June 2005 fee as ordered by the trial judge or that her failure to pay was intentional. Accordingly, the trial court properly did not base its judgment on a finding that Appellant failed to pay her community supervision fees, and the record does not support our reforming the judgment to reflect such a finding.") (citations omitted).[9]

There being no evidence that appellant acted intentionally or knowingly, as alleged by the State, we conclude that the trial court abused its discretion in revoking appellant's community supervision. Appellant's first issue is sustained.[10]

---

[9] The Texas Court of Criminal Appeals has issued similar decisions. *See Stanfield v. State*, 718 S.W.2d 734, 738 (Tex. Crim. App. 1986) ("We conclude the State still has the burden of proving an alleged failure to pay fees, costs and the like was intentional."); *Cardona v. State*, 665 S.W.2d 492, 494 (Tex. Crim. App. 1984) ("[E]vidence adduced in the case before us is conspicuously devoid of any notice as to when, if ever, appellant was to attend the Houston Council on Alcoholism."); *Harris v. State*, 608 S.W.2d 229, 230 (Tex. Crim. App. 1980) ("The order to revoke probation for violation of this condition cannot be sustained because this condition is so vague and indefinite that it cannot be enforced; it does not inform the probationer with sufficient certainty of what he is to do."); *Cotton v. State*, 472 S.W.2d 526, 528 (Tex. Crim. App. 1971) ("We conclude that the state did not meet its burden to prove that appellant's failure to pay probation fees was willful and did not prove his ability to make such payments."); *Pool v. State*, 471 S.W.2d 863, 864 (Tex. Crim. App. 1971) (reversing revocation of community supervision based on defendant's "failure to support [his] minor children," holding: "Proof merely of the failure to support is not sufficient; it must be shown that the accused could have contributed more to the support of his children and that his failure to do so was willful."); *Hall v. State*, 452 S.W.2d 490, 492 (Tex. Crim. App. 1970) ("With regard to probationary conditions relating to the payment of restitution and court costs, there must be a showing at the revocation hearing of the probationer's ability to make the payments required and that the failure to make restitution was intentional, and the failure to pay court costs was willful. The same requirements have been applied to the so called supervisory fee.") (citations omitted); *Campbell v. State*, 420 S.W.2d 715, 716 (Tex. Crim. App. 1967) ("This situation points up the practicality of including specific reporting dates in the written conditions, a copy of which must be delivered to the probationer.").

[10] In light of this disposition, we do not reach the merits of appellant's second issue. *See* TEX. R. APP. P. 47.1.

### III. Conclusion

We reverse the judgment of the trial court and remand for further proceedings consistent with this opinion.

_____
ROGELIO VALDEZ
Chief Justice

Dissenting Memorandum Opinion
by Justice Vela.

Do not Publish.
TEX. R. APP. P. 47.2(b)
Delivered and filed the
28th day of August, 2012.