

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-24-00174-CR

Damon **GOMEZ**,
Appellant

v.

The **STATE OF TEXAS**,
Appellee

From the 144th Judicial District Court, Bexar County, Texas
Trial Court No. 2018CR11403W
Honorable Michael E. Mery, Judge Presiding

Opinion by:     Velia J. Meza, Justice

Sitting:        Lori I. Valenzuela, Justice
                Adrian A. Spears II, Justice
                Velia J. Meza, Justice

Delivered and Filed: July 30, 2025

AFFIRMED AS MODIFIED

Damon Gomez appeals the trial court's judgment revoking his community supervision.

We affirm as modified.[1]

---

[1] On April 17, 2025, this court withdrew the case from submission and abated the appeal to allow the trial court to address certain issues. We instructed the trial court to hold a hearing on admissibility issues identified within the record and to do so before June 2, 2025. Without holding a hearing as instructed by this court, the trial court submitted a Judgment Nunc Pro Tunc indicating the prior judgment contained a significant clerical error. On June 12, after not receiving an objection from appellant or the State on the newly filed record, we withdrew our April 17, 2025, order, accepted the supplemental clerk's record, and reinstated the appeal. Subsequently, on June 16, 2025, appellant filed an objection to the trial court's failure to hold a hearing. Having reviewed appellant's "objection," which we will treat as a motion filed with the papers of this cause, we deny said motion as moot.

**BACKGROUND**

On October 31, 2018, Damon Gomez signed a waiver of indictment and pled guilty to the second-degree felony offense possession of substance in penalty group 1 or 1-B, four grams or more but less than 200 grams. TEX. HEALTH & SAFETY CODE 481.115(d). On December 19, 2018, the trial court granted Gomez's application for deferred adjudication and sentenced Gomez to seven years of community supervision and a $1,000 fine. The trial court ordered Gomez to submit to "frequent and random UA's." The condition is laid out in the terms and conditions of community supervision that Gomez signed, and reads as follows:

> Avoid injurious or vicious habits and abstain from the illegal use of controlled substances, dangerous drugs, nor use alcoholic beverages; submit to drug testing or as directed by the Court/Court Officer/Supervision Officer and pay a one time urinalysis fee of $20.00 ninety (90) days after being granted community supervision.

Beginning on June 9, 2023, the State filed four separate motions to enter adjudication of guilt and revoke community supervision (hereinafter, "motions to adjudicate") wherein the State alleged Gomez violated the terms and conditions of his community supervision on 16 different occasions. Gomez pled "not true" to all 16 violations of his community supervision. On February 20, 2024, the trial court held a contested hearing on the State's motions to adjudicate and found "that the State [proved] by a preponderance of the evidence four instances of [Gomez's] failure to submit to drug testing, those instances being" April 7, 2022; January 3, 2023; April 6, 2023; and August 11, 2023; in violation of the terms and conditions of his community supervision. On March 5, 2024, the court held a punishment hearing and sentenced Gomez to nine years in the Texas Department of Criminal Justice and assessed a $2,500 fine.

On March 6, 2024, the trial court entered its written Judgment Adjudicating Guilt, which—contrary to its oral pronouncement—found that Gomez violated the terms and conditions of his community supervision on sixteen separate occasions, as alleged in the State's motions to

adjudicate. Although this court abated the appeal and remanded for further findings, on May 30, 2025, the trial court entered a Judgment Nunc Pro Tunc to correct clerical errors in its previous judgment. The corrected judgment now reflects the court's original oral pronouncement that Gomez failed to submit to drug testing on April 7, 2022; January 5, 2023; April 6, 2023; and August 11, 2023.

On appeal, Gomez contends in three separate issues, which can be consolidated into two, that (1) the evidence used in support of his adjudication and revocation was legally insufficient, and (2) that certain evidence admitted during the trial violated the Sixth Amendment's Confrontation Clause.

## STANDARDS OF REVIEW

We review the trial court's order revoking community supervision for abuse of discretion. *Hacker v. State*, 389 S.W.3d 860, 865 (Tex. Crim. App. 2013). A trial court abuses its discretion when it acts without reference to any guiding rules or principles. *State v. Thomas*, 428 S.W.3d 99, 103 (Tex. Crim. App. 2014). The trial court is vested with discretion to decide whether a defendant will continue community supervision or have it revoked. *DeGay v. State*, 741 S.W.2d 445, 449 (Tex. Crim. App. 1987); TEX. CODE CRIM. PRO. art. 42A.755. However, the trial court does not have absolute discretion in the decision to revoke community supervision. *DeGay*, 741 S.W.2d at 449. Community supervision should not be arbitrarily revoked by the court; the court is not authorized to revoke without a showing that the defendant violated a condition of the community supervision. *Leonard v. State*, 385 S.W.3d 570, 576 (Tex. Crim. App. 2012).

**ANALYSIS**

1.  Sufficiency of the Evidence

Gomez complains that the trial court abused its discretion by revoking his community supervision based on legally insufficient evidence. In light of the limited and largely hearsay-based record, and constrained by the applicable standard of review, we are unable to agree with Gomez.

When evaluating a legal sufficiency challenge, we view the evidence in the light most favorable to the factfinder to determine whether it could make the findings that were returned. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010) (plurality op.). Preponderance of the evidence is the evidentiary standard in a motion to revoke hearing. *Rickels v. State*, 202 S.W.3d 759, 763 (Tex. Crim. App. 2006). "Preponderance of the evidence means 'that greater weight of the credible evidence which would create a reasonable belief that the defendant has violated a condition' of his [or her] community supervision." *Carreon v. State*, 548 S.W.3d 71, 77 (Tex. App.—Corpus Christi 2018, no pet.) (quoting *Rickels*, 202 S.W.3d at 763–64). "When the State has failed to meet its burden of proof, the trial [court] abuses [its] discretion in issuing an order to revoke [community supervision]." *Cardona v. State*, 665 S.W.2d 492, 493–94 (Tex. Crim. App. 1984) (citation omitted). However, the State need only establish one sufficient ground for revocation to support the trial court's order revoking community supervision. *Accord Gobell v. State*, 528 S.W.2d 223 (Tex. Cr. App. 1975); *Maples v. State*, No. 02-22-00065-CR, 2023 WL 2534469, at *2 (Tex. App.—Fort Worth Mar. 16, 2023, no pet.) (not designated for publication); *Moore v. State*, 605 S.W.2d 924, 926 (Tex. Crim. App. [Panel Op.] 1980).

### 1.1  The Evidence Presented By the State

To establish Gomez violated the terms and conditions of his community supervision by failing to submit to drug testing on April 7, 2022; January 5, 2023; April 6, 2023; and August 11, 2023; the State relied solely on the testimony of Officer Guerra—one of Gomez's many probation officers. Officer Guerra testified that she was not Gomez's probation officer until August 30, 2023. Because Officer Guerra was not supervising Gomez during the relevant periods in which he allegedly failed to submit to drug testing, she lacked personal knowledge of those events. Nevertheless, in her capacity as custodian of records for the probation department's file on Gomez, and without objection, Officer Guerra read the limited entries from the file to fill the gaps in her personal knowledge.[2]

On direct examination, Officer Guerra discussed how Recovery Monitoring Solutions ("RMS") was the lab used by her department to collect and test a probationer's urine for drugs. Specifically, she discussed that while there are "different processes" to determine whether a probationer failed to submit to a drug test, they all ultimately require a probation officer, along with a supervisor, to "double-check" a probationer's RMS records to determine whether they submitted to drug testing as directed. And when asked "which dates [Gomez] failed to submit his urinalysis to you or whatever testing to probation," Officer Guerra testified as follows: "Yes. April

---

[2] The Court of Criminal Appeals has held that if the proper predicate is laid then the business record exception to the rule against hearsay applies and a witness without personal knowledge of the events recorded "could testify from probation departments records." *Simmons v. State*, 564 S.W.2d 769, 770 (Tex. Crim. App. [Panel Op.] 1978). In this case, it is unclear whether the State laid the proper predicate to meet the business record hearsay exception. *See* TEX. R. EVID. 803(6). Nevertheless, the defense did not lodge "a timely objection on the record with sufficient specificity to make the trial court aware of the complaint." *Brown v. State*, No. 03-10-00515-CR, 2013 WL 857252, at *2 (Tex. App.—Austin Mar. 7, 2013, no pet.) (mem. op., not designated for publication) (internal quotation marks omitted). Accordingly, this hearsay evidence—whether admissible or inadmissible—bears probative value since it was admitted without an objection. TEX. R. EVID. 802; *see also Fernandez v. State*, 805 S.W.2d 451, 456 (Tex. Crim. App. 1991) (holding that if an appellant fails to object to hearsay, they "must be prepared to accept the concept that hearsay could be considered by the trier of fact as probative evidence.").

7th, 2022; January 5th, 2023; April 6, 2023; August 11th, 2023; and those are all the fail to submits."

On cross-examination, Officer Guerra testified that the probation department has access to RMS's data for all probationers and can review the complete history of drug test results submitted by each individual. When asked whether she verified whether Gomez submitted to drug testing, Officer Guerra testified that she did not. Rather, she made a "professional assessment" that such verifications were done by those supervising Gomez at the time his alleged failures to submit to drug testing were reported. While reading from her computer entries on "chronos" Officer Guerra testified as follows: "I can tell you what was documented that he was given to do. So on [April 7, 2022,] it says probationer will go to the lab and submit another UA." But when questioned about the time frame in which Gomez had to submit to drug testing, or what lab he was directed to go to, Officer Guerra testified that she could only "read[] what it says" in the probation department's file and noted that the record did not contain such information.

### 1.2     Although Sparse, the Evidence Presented Is Legally Sufficient to Support at Least One Ground for Revocation

Despite its sparsity, the record contains legally sufficient evidence to uphold the trial court's judgment. Again, in our review, we must view the evidence presented at the revocation hearing in the light most favorable to the trial court's decision. *Liggett v. State*, 998 S.W.2d 733, 736 (Tex. App.—Beaumont 1999, no pet.). And we "must review the entire record to determine whether there are any facts that lend support for any theory upon which the trial court's decision can be sustained. If the implied or actual finding is supported by the record, it must be sustained." *Ice v. State*, 914 S.W.2d 694, 696 (Tex. App.—Fort Worth 1996, no pet.) (footnote omitted).

In this case, the State bore the burden of proving, by a preponderance of the evidence, that Gomez failed to submit to drug testing or as directed by the Court/Court Officer/Supervision

Officer. Accordingly, the State was required to establish both: (1) that Gomez was directed to submit to drug testing, and (2) that he failed to comply. Although the evidentiary record is undeniably sparse, it is legally sufficient to support a finding that, on April 7, 2022, Gomez was directed by his probation officer to submit to drug testing and failed to do so. We therefore conclude that the trial court did not abuse its discretion in revoking Gomez's community supervision on this basis.

Having so concluded, we are mindful that the State, in this instance, failed to present sufficient and competent evidence establishing that Gomez was directed to submit to drug testing on January 5, 2023; April 6, 2023; and August 11, 2023. While the probation file includes a clear directive dated April 7, 2022—which substantiates one allegation—it does not suffice to support the remaining allegations, which rest solely upon unspecified notations in the probation file. Consequently, we modify the trial court's Judgment Nunc Pro Tunc to delete these grounds as a basis for the trial court's adjudication and revocation.

2. Sixth Amendment's Confrontation Clause

In his next issue, Gomez contends that admission of 911 calls and the drug lab reports into evidence violated the Sixth Amendment's Confrontation Clause. However, "we need not address appellant's other contentions since one sufficient ground for revocation . . . support[s] the court's order to revoke probation." *Moore*, 605 S.W.2d at 926 (citing *Jones v. State*, 571 S.W.2d 191 (Tex. Cr. App. [Panel Op.] 1978)).

As modified, we affirm the trial court's judgment.

Velia J. Meza, Justice

DO NOT PUBLISH