**Opinion issued December 22, 2020**



**In The**

# Court of Appeals

**For The**

# First District of Texas

————————————

**NO. 01-18-01074-CR**

————————————

**ANDRES TORRES, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 337th District Court**
**Harris County, Texas**
**Trial Court Case No. 1538219**

---

## CONCURRING OPINION

I join the majority opinion, but write separately to address the contentions of appellant, Andres Torres, that he had the right to confront and cross-examine witnesses against him at his revocation and adjudication hearing and, more

generally, that he had a liberty interest at stake in those proceedings that entitled him to minimum due process that he did not receive.

Appellant brings two issues. In his first issue, appellant argues that "[t]he trial court committed fundamental constitutional error when it admitted a hearsay 'violation report' and related testimony over defense counsel's objections: hearsay, violation of the right of confrontation, and violation of the right to cross-examination." In his second issue, appellant argues that "[b]ecause the State offered no evidence—other than the hearsay from the violation report—that [appellant] violated any condition of his deferred adjudication, the trial court abused its discretion when it revoked his community supervision." Appellant casts these as "liberty" or due process issues.

With respect to appellant's first issue, the majority, citing several intermediate appellate court cases, characterizes the question of whether a defendant has rights under the Confrontation Clause at a revocation and adjudication hearing as "unsettled" and notes that, in a previous case, this Court assumed, without deciding, that a defendant may raise a Confrontation Clause objection during a revocation proceeding. *See* Slip Op. at 11. Rather than address this constitutional question, the majority reverses the judgment of the trial court on the basis that the State did not present sufficient evidence to support revocation of appellant's community supervision.

I agree with the majority that the State failed to prove by a preponderance of the evidence that appellant violated the terms and conditions of his community supervision, and I join the majority opinion on this issue. I would, however, address the questions that the majority leaves unanswered concerning whether appellant had the right to confront and cross-examine the witnesses against him at his revocation and adjudication proceeding and whether he had a fundamental constitutional liberty interest, or right to due process, that was violated by those proceedings. I would hold that a defendant does have these rights and that appellant, specifically, was deprived of his fundamental constitutional Sixth and Fourteenth Amendment rights to minimal due process and confrontation and cross-examination of the witnesses against him at the revocation hearing. I would also hold that the controlling United States Supreme Court and Texas Court of Criminal Appeals law is clear in this case, and the law as stated in the intermediate appellate court cases cited by the majority is directly contrary to this controlling law on these issues and should be expressly overruled.

Subject to these fundamental issues, I would further hold that the trial court's revocation of appellant's community supervision was based solely on inadmissible hearsay that did not meet the requirements for admissibility under the business records exception to the hearsay rule. Therefore, the evidence was legally insufficient to support revocation and did not justify the trial court's proceeding to

3

adjudicate appellant's guilt. The trial court's revocation of appellant's community supervision, adjudication of his guilt for the charged offense, and assessment of appellant's punishment at twenty years' confinement was therefore an abuse of appellant's fundamental constitutional rights to minimal due process and confrontation and an abuse of discretion.

I would reverse the judgment of the trial court and remand the case for a new hearing on revocation of appellant's community supervision and—contingent on the trial court's determination under controlling law that appellant's community supervision should be revoked, rather than reinstated or amended—a new adjudication hearing.

**Background Facts**

Appellant, who was seventeen years old at the time of the underlying offense, was charged as an adult with the first-degree felony offense of aggravated robbery. On June 30, 2017, he pleaded guilty as part of a plea bargain, and the trial court deferred adjudication of guilt and placed him on community supervision for ten years. The trial court ordered appellant to participate in treatment in a facility for offenders with substance abuse problems, the Substance Abuse Felony Punishment Facility (SAFPF). The terms and conditions of appellant's community supervision required him to

> comply with all rules, regulations, and treatment programs and upon
> release [from SAFPF, appellant] is required to participate in a drug or

4

alcohol abuse continuum of care treatment plan as developed by the Texas Commission on Alcohol and Drug Abuse (TCADA), abiding by all rules and regulations of said treatment plan until discharged by the Court.

Appellant acknowledged and signed these terms and conditions.

On June 26, 2018, the State filed a motion to adjudicate guilt, alleging that appellant had violated the conditions of his community supervision by failing to complete the SAFPF program. At the hearing on the State's motion to adjudicate, Tony Dawson testified that he was the SAFPF coordinator for Harris County and that he had prepared the report discharging appellant from the SAFPF program based on information conveyed to him by prison personnel. Among the exhibits the trial court admitted into evidence was Exhibit 4, appellant's SAFPF "Violation Report," or discharge report, prepared by Dawson based on information supplied to him by SAFPF personnel. Dawson acknowledged that he did not have personal knowledge of any of the information contained in the report. No witness with personal knowledge of any of the SAFPF rules and regulations that appellant allegedly violated, resulting in his discharge from the program, testified at the revocation hearing.

At the beginning of Dawson's testimony about Exhibit 4, defense counsel objected to the Report as hearsay and as denying appellant his rights of confrontation and cross-examination. Counsel for the State responded that he had established that that the Report was a business record and "additionally, there is no confrontational

clause required for an administrative hearing, like this Motion to Adjudicate."

Following the court's admission of the Report into evidence and voir dire of Dawson, which again demonstrated his lack of personal knowledge of the facts upon which the Report was based, defense counsel again stated:

> We'll object, Your Honor, for lack of personal knowledge. We'll also object because of hearsay and confrontation and cross. Our position is that we have a liberty interest here at stake in [appellant] and, therefore, confrontation and cross should apply when [appellant]'s liberty is at stake in this hearing. And for all those reasons, we would object to the admission of State's Exhibit No. 4.

On cross-examination by defense counsel, Dawson again admitted that he had no personal knowledge of any facts supporting any of the allegations contained in Exhibit No. 4, and he could not identify any specific act by appellant that violated any specific rules or regulations. Nor could he personally assess the veracity or the credibility of any of the allegations made against appellant. Dawson agreed that, based on Exhibit 4, there was no way of telling who had made the allegations against appellant. The State passed the witness without redirect examination.

In closing, the defense argued that there was no evidence as to what the SAFPF rules were and no evidence of any rule violations based on competent testimony of a witness with firsthand knowledge, so that the State had failed to prove its central allegation. In response, the State argued that all it had to prove was that "this was an unsuccessful discharge." As for "[t]he exact character and specific rule

violations," the State argued, "we've alleged that he was unable to complete the SAFPF program."

At the conclusion of these arguments, the trial court found "from a preponderance of the evidence"—the burden of proof for revocation of community supervision—"that the allegations in the Motion to Adjudicate Guilt are true." It thereupon turned to adjudication and found appellant guilty of the first-degree offense of aggravated robbery with a deadly weapon. After allowing brief arguments from counsel as to punishment, it sentenced appellant to twenty years in prison, as recommended by the State. This appeal followed.

## Argument

In two issues, appellant argues that the trial court committed fundamental constitutional error, in violation of his liberty interest, by admitting Exhibit 4, the Violation Report, and related testimony over defense counsel's objections to "hearsay, violation of the right of confrontation, and violation of the right to cross-examination." The State denies that the Confrontation Clause applies to this case, and it contends the evidence supporting appellant's violation of the terms of his community supervision—specifically, the Report—was properly admitted under the business records exception to the hearsay rule and was sufficient to support revocation of his community supervision and the subsequent adjudication of his guilt. The State contends that revocation proceedings are administrative proceedings

7

to which constitutional rights do not attach, and all it needed to show is that appellant violated the terms of his community supervision, which the Report, a business record, did show.

## A. Applicable Law: The Confrontation Clause and the Hearsay Rule

Appellant's arguments that his community supervision was improperly revoked and he was, therefore, improperly adjudicated guilty of the charged crime of aggravated robbery turn on the applicability of the Confrontation Clause to revocation and adjudication hearings as well as the requirement that the facts justifying revocation be proved in accordance with the Texas Rules of Evidence regarding hearsay and with the minimum requirements of constitutional due process.

### 1. *The Confrontation Clause*

The Confrontation Clause of the Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ." U.S. CONST. amend. VI. The right of confrontation includes "not only the right to face-to-face confrontation, but also the right to meaningful and effective cross-examination." *Coronado v. State*, 351 S.W.3d 315, 325 (Tex. Crim. App. 2011) (citations omitted). Admission of a hearsay statement made by a non-testifying declarant violates the Confrontation Clause if the statement was testimonial and the defendant did not have a prior opportunity to cross-examine the witness. *Crawford v. Washington*, 541 U.S.

8

36, 68 (2004); *see also Woodall v. State*, 336 S.W.3d 634, 642 (Tex. Crim. App. 2011) ("[T]o implicate the Confrontation Clause, an out-of-court statement must (1) have been made by a witness absent from trial and (2) be testimonial in nature."). A statement is "testimonial" when circumstances objectively indicate it was made for the primary purpose of "establish[ing] or prov[ing] past events potentially relevant to later criminal prosecution." *Langham v. State*, 305 S.W.3d 568, 576 (Tex. Crim. App. 2010) (quoting *Davis v. Washington*, 547 U.S. 813, 822 (2006)); *De La Paz v. State*, 273 S.W.3d 671, 680 (Tex. Crim. App. 2008).

### 2. *Hearsay and the Business Records Exception*

Hearsay is an out-of-court statement offered to prove the truth of the matter asserted in the statement. TEX. R. EVID. 801(d). Under the Rules of Evidence, hearsay generally is not admissible unless a statute or rule provides otherwise. *See* TEX. R. EVID. 802. One such exception is provided in Rule of Evidence 803(6) for business records:

> A record of an act, event, condition, opinion, or diagnosis [is not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness] if:
>
> (A)    the record was made at or near the time by—or from information transmitted by—someone with knowledge;
>
> (B)    the record was kept in the course of a regularly conducted business activity;
>
> (C)    making the record was a regular practice of that activity;

9

(D)   all these conditions are shown by the testimony of the custodian or another qualified witness . . . ; and

(E)   the opponent fails to demonstrate that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness. . . .

TEX. R. EVID. 803(6).

## B.   Applicability of Minimal Constitutional Guarantees of Confrontation and Due Process of Law to Revocation Hearings

Citing *Ex parte Doan*, 369 S.W.3d 205 (Tex. Crim. App. 2012), appellant contends that the adjudication hearing was a "criminal prosecution" within the meaning of the Confrontation Clause and that, therefore, the Confrontation Clause applied to his revocation and adjudication hearing. The State argues that this hearing was an administrative proceeding and that the Confrontation Clause does not apply to such hearings.

As the majority acknowledges, the Court of Criminal Appeals addressed the issue of the nature of community-supervision revocation proceedings in *Doan*. Contrasting these hearings with federal revocation hearings, it held that "[c]ommunity-supervision revocation proceedings are not administrative hearings; they are judicial proceedings, to be governed by the rules established to govern judicial proceedings." *Doan*, 369 S.W.3d at 212. The majority notes that several intermediate appellate court cases decided before *Doan* and several cases decided afterwards have concluded that the Confrontation Clause does *not* apply to

community supervision revocation proceedings. *See Olabode v. State*, 575 S.W.3d 878, 881 (Tex. App.—Dallas 2019, pet. ref'd) ("By its own terms, the Confrontation Clause applies only to criminal prosecutions, and a probation revocation, whether it follows 'regular' probation or deferred adjudication probation, is not a stage of criminal prosecutions."); *Mauro v. State*, 235 S.W.3d 374, 375–76 (Tex. App.—Eastland 2007, pet. ref'd); *Trevino v. State*, 218 S.W.3d 234, 239 (Tex. App.—Houston [14th Dist.] 2007, no pet.); *see also Corona v. State*, No. 14-17-00821-CR, 2019 WL 1768598, at *3 (Tex. App.—Houston [14th Dist.] Apr. 23, 2019, no pet.) (mem. op., not designated for publication) ("A community supervision revocation hearing is not part of a criminal prosecution.").

The majority also notes that this Court has previously assumed, without expressly deciding the issue, that revocation hearings are criminal proceedings for purposes of the Confrontation Clause. *See Blackman v. State*, No. 01-12-00525-CR, 2014 WL 50804, at *3 (Tex. App.—Houston [1st Dist.] Jan. 7, 2014, pet. ref'd) (mem. op., not designated for publication) ("We acknowledge that *Doan* did not decide the issue of whether a defendant has a right to confront witnesses during a community supervision revocation, and no case since *Doan* has revisited that issue. However, for purposes of this opinion, we will assume without deciding, that a defendant can raise a Confrontation Clause objection in a community-supervision revocation proceeding.").

11

The majority characterizes the law concerning this issue as "unsettled" and does not address the question of whether the Confrontation Clause applies in hearings to revoke a defendant's deferred adjudication community supervision, turning instead to appellant's second issue. I would address this question and would conclude that, under controlling United States Supreme Court and Court of Criminal Appeals precedent, the Confrontation Clause applies to revocation proceedings.

The opinions from our sister courts cited in the majority opinion all fail to recognize the full import of *Doan.* Thus, they fail to give weight—much less controlling weight—to the Texas Court of Criminal Appeals' holding in that case.

*Doan* explains the similarities and differences in revocation hearings in federal and state courts in light of controlling United States Supreme Court precedent governing constitutional rights. First, it distinguishes between a federal probation revocation hearing, which is an administrative proceeding that requires a preliminary hearing to determine probable cause to believe a probationer has violated a condition of his probation before proceeding to a hearing before the parole authority, and the Texas system, which is based in the courts and has only one hearing. *Doan*, 369 S.W.3d at 209–10. The Court of Criminal Appeals stated:

> In Texas, the State is represented by a prosecutor, the defendant does have a right to counsel, the hearing is before the judge, formal rules of evidence do apply, and there may be appeal directly to a court of appeals. They are conducted entirely within the judicial branch. The Rules of Evidence and the exclusionary rule to bar illegally seized evidence apply fully in a Texas probation revocation hearing. Indeed,

12

aside from the burden of proof required to prove a community-supervision violation (preponderance of the evidence, which is lower than the burden of proof beyond a reasonable doubt that is required to prove a new criminal offense), there are few procedural differences between a Texas criminal trial and a Texas community-supervision revocation proceeding.

*Id.* at 210.

The court then went on to state the purpose of a community-supervision revocation proceeding. It observed that there *is* an administrative aspect to community supervision revocation hearings in Texas state court in that, "[e]ven if a community-supervision violation is proven, the trial court has the discretion to continue or modify the terms of community supervision rather than revoking it," and the court "has the discretion to make this determination based on its weighing of policies, such as protecting the public and rehabilitating the offender." *Id.* at 212. It then explained the difference between revocation proceedings and administrative proceedings:

> A Texas community-supervision revocation proceeding involves the application of law to past facts that remain static. It is conducted according to judicial rules before a trial judge, not an administrative agency. Applying administrative law—the law that governs the decision-making processes of administrative agencies—to revocation hearings has no basis in the Code of Criminal Procedure. Community-supervision revocation proceedings are not administrative hearings; they are judicial proceedings, to be governed by the rules established to govern judicial proceedings.

*Id.*

13

In explicating this law, the Court of Criminal Appeals relied heavily on United States Supreme Court precedent, primarily *Morrissey v. Brewer*, 408 U.S. 471 (1972), and *Gagnon v. Scarpelli*, 411 U.S. 778 (1973).

*Morrissey* was a federal revocation of parole case. In that case, the Court held that the minimum due process requirements for revocation of parole include both a preliminary inquiry to determine probable cause to arrest the defendant after an alleged parole violation and a revocation hearing. *Morrissey*, 408 U.S. at 485–89. The Court further opined that—unlike the revocation of deferred adjudication community supervision at issue in this case—revocation of parole arises after criminal prosecution and the imposition of sentence and is not part of the criminal prosecution; thus, the full panoply of rights due the defendant in a criminal proceeding does not apply to a parole revocation hearing. *Id.* at 480. This does not mean, however, that no constitutional rights apply. In a parole revocation proceeding, the question as to which rights apply turns on whether the parolee is facing "grievous loss" and whether the nature of the individual's interest at stake is "within the contemplation of the 'liberty or property' language of the Fourteenth Amendment," which, in a parole case (as in a community supervision case), is the interest of the defendant in his continued liberty. *Id.* at 481–82. The Court concluded that the defendant's liberty interest "is valuable and must be seen as within the protection of the Fourteenth Amendment," such that the termination of that interest

14

"calls for some orderly process." *Id.* at 482. However, the question remained as to what amount of process is due. *Id.* at 483.

The Supreme Court reasoned that, as a parolee has already been found guilty, and with release on parole there is always a risk that the parolee will commit additional anti-social acts, the State must be able to return the parolee to prison "without the burden of a new adversary criminal trial if in fact [the parolee] has failed to abide by the conditions of his parole." *Id.* However, both the parolee and society have a stake in "restoring him to normal and useful life within the law," as well as an interest in treating him with basic fairness. *Id.* at 484. Therefore, an informal hearing is needed to assure that the finding of a parole violation will be based on verified facts and the exercise of discretion concerning whether to revoke parole will be informed by an accurate knowledge of the parolee's behavior. *Id.* Under federal law, this hearing need not be conducted by a judicial officer— although under Texas law it is—and certain "*minimum requirements of due process*" must be met. *Id.* at 485–89 (emphasis added). Moreover, if the parolee desires, he must be given the opportunity for a formal hearing leading to a final evaluation of any contested relevant facts and consideration of whether the facts as determined warrant revocation. *Id.* at 487–88. Under Texas law, the informal and the formal hearing are combined in one judicial proceeding, as the Court of Criminal Appeals explained in *Doan*. *See* 369 S.W.3d at 210, 212.

15

The Supreme Court also sketched out the minimal due process requirements of a revocation of parole hearing in *Morrissey* and quoted *Morrissey* on those requirements the next year in *Scarpelli*, a revocation of probation case:

> (a) *written notice of the claimed violations* of parole; (b) *disclosure* to the parolee *of evidence against him*; (c) *opportunity to be heard in person and to present witnesses and documentary evidence*; (d) *the right to confront and cross-examine adverse witnesses* (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) *a "neutral and detached" hearing body* such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) *a written statement by the factfinders as to the evidence relied on and reasons for revoking parole*.

*Morrissey*, 408 U.S. at 489 (emphasis added); *see Scarpelli*, 411 U.S. at 786 (quoting *Morrissey,* 408 U.S. at 489). In addressing revocation of probation in *Scarpelli*, the Supreme Court clearly stated that there is no "difference relevant to the guarantee of due process between the revocation of parole and the revocation of probation" in that it "does result in a loss of liberty." 411 U.S. at 782.

If these minimal due process requirements apply to both parolees and probationers who have already been convicted of a crime, they necessarily apply all the more at a revocation of community supervision hearing where adjudication of guilt has been deferred and made dependent on the successful completion of the terms of community supervision, as here. Indeed, the "minimal requirements of due process" apply in this deferred adjudication case for the exact same reason they apply in federal administrative proceedings to revoke parole or probation: the revocation

16

of community supervision results in a loss of liberty, a right protected by the Due Process Clause, as appellant has claimed.

Moreover, in this type of case, the loss of liberty—here, appellant's being adjudicated guilty and sentenced to twenty years in prison—is more profound than in either *Morrissey* or *Scarpelli*, as in both those cases the defendant had already been convicted of a crime and sentenced to lose his liberty and so knew exactly what he stood to lose if he did not successfully complete his parole or probation. Yet here, appellant, upon being unsuccessfully discharged from the SAFPF program, faced revocation of his community supervision and the possibility of a sentence anywhere within the statutory punishment range for a first-degree felony—from five to ninety-nine years' confinement or confinement for life—but he was afforded *none* of the safeguards of due process afforded parolees and probationers in *Morrissey* and *Scarpelli*—including the constitutional Fourteenth Amendment due process rights to notice of the acts upon which revocation of community supervision and the loss of his liberty were predicated, a written statement of the evidence relied on to justify revocation, and the constitutional Sixth Amendment rights to confront and cross-examine adverse witnesses—exactly the rights appellant claims he was due.

And there is an additional reason for according these constitutional protections to the defendant in a revocation of community supervision proceeding. The first step in a revocation proceeding, according to the Supreme Court, "involves

17

a wholly retrospective factual question: whether the parolee has *in fact* acted in violation of one or more conditions of his parole." *Morrissey*, 408 U.S. at 479 (emphasis added). If it is determined that he has, (1) the thrust of the probation-parole movement—keeping offenders in the community and working to rehabilitate them—changes to (2) an interest "in the accurate finding of fact and the informed use of discretion" to ensure that the probationer or parolee's liberty is not unjustifiably taken away and also to make certain that the State "is neither unnecessarily interrupting a successful effort at rehabilitation nor imprudently prejudicing the safety of the community." *See Scarpelli*, 411 U.S. at 785.

This first step too was denied to appellant in that he was afforded none of the constitutionally mandated means to determine whether he had in fact acted in violation of one or more specified conditions of his probation and no basis was provided upon which the court could determine whether the State was unnecessarily interrupting a successful effort at rehabilitation or not. Appellant's possibility of rehabilitation was not considered at all.

Finally, if there were any lingering doubt as to whether minimal constitutional due process guarantees—including the Sixth Amendment right "to confront and cross-examine adverse witnesses"—apply to revocation proceedings, the Court of Criminal Appeals has, since *Doan*, made it clear that they do. In *Leonard v. State*, the court expressly repudiated the claim made by the State in this case that the abuse-

of-discretion standard of review in revocation cases is satisfied simply by evidence that the appellant was discharged from a program made a condition of community supervision. 385 S.W.3d 570, 577 (Tex. Crim. App. 2012) (holding that, when defendant's compliance with terms of community supervision is "subject to the discretion of a third party," such as requirement that defendant successfully complete therapy program, appellate review of whether trial court abused its discretion in revoking community supervision must also involve examining "third party's use of its discretion to ensure that it was used on a basis that was rational and connected to the purposes of community supervision").

The *Leonard* court opined: "Revocation involves the loss of liberty and therefore implicates due process." *Id.* (citing *Caddell v. State*, 605 S.W.2d 275, 277 (Tex. Crim. App. 1980)). Thus, "The central issue to be determined in reviewing a trial court's exercise of discretion in a [community supervision] revocation case is whether the [defendant] was afforded due process of law." *Id.* (quoting *DeGay v. State*, 741 S.W.2d 445, 450 (Tex. Crim. App. 1987)). The court remarked that it "would surely offend due process if a defendant were discharged from his therapy program for a wholly inappropriate reason—such as illegal discrimination or mere caprice—and the bare fact of that discharge were used as a basis to revoke the defendant's community supervision," even though by an ordinary abuse of discretion standard of review that revocation would be sustained. *Id.* Yet here,

*exactly* what the Court of Criminal Appeals declared an abuse of discretion and an offense to due process happened—appellant's community supervision was revoked on the bare fact of his discharge from the SAFPF program without any competent evidence of the underlying facts justifying revocation and a change in direction from rehabilitation to protection of the community.

That appellant was, in fact, denied even minimal due process rights when his liberty was at stake and that the revocation of his community supervision, adjudication of his guilt, and his sentencing to twenty years in prison were arbitrarily and capriciously determined on the basis of the bare fact of his discharge from the SAFPF program is not only expressly made clear by the State's own argument that nothing more was necessary, it is made even clearer when we consider appellant's second issue.

## C. Admissibility of Evidence Supporting Revocation Under the Business Records Exception to the Hearsay Rule

In his second issue, appellant argues that, because the State offered no evidence that he violated any condition of his community supervision, other than hearsay from Exhibit 4, the Violation Report prepared by Dawson, the court abused its discretion in revoking his community supervision without sufficient supporting evidence.

Appellant contends that the content of the Report is inadmissible hearsay within hearsay and that the Report was also improperly admitted into evidence as a

20

business record; therefore, there was no evidence upon which to predicate revocation of his deferred adjudication community supervision. Appellant also argues that, once his counsel objected to the admission of the Report as violating the Confrontation Clause under *Crawford*, the burden shifted to the State to establish that it was admissible. Thus, the State was required to show that the Report did not contain hearsay statements or, if it did, the statements were nevertheless admissible over a hearsay objection. *See De La Paz*, 273 S.W.3d at 680–81; *Vinson v. State*, 252 S.W.3d 336, 340 (Tex. Crim. App. 2008) (stating that proponent of evidence has burden of establishing admissibility of proffered evidence, and once objection to evidence is made, proponent must demonstrate that evidence overcomes stated objection); *see also Juarez v. State*, 461 S.W.3d 283, 298 (Tex. App.—Texarkana 2015, no pet.) ("If a report contains some hearsay statement, the hearsay statement must fall under some hearsay exception of its own because neither the public records and reports exception nor the records of regularly conducted activities exception protects hearsay within hearsay.") (quoting *Perry v. State*, 957 S.W.2d 894, 899–900 (Tex. App.—Texarkana 1997, pet. ref'd)).

If appellant's claims are correct, his community supervision was indeed revoked in violation of the minimum due process standards for such proceedings set out in *Morrissey*, *Scarpelli*, *Doan*, and *Leonard*. I would hold that his claims are indeed correct. The conclusory statements in Exhibit 4 regarding appellant's

21

unspecified violations of unidentified rules were offered as the only evidence of appellant's violation of the conditions of his community supervision. These statements thus clearly satisfy the definition of hearsay as out-of-court statements offered to prove the truth of the matters asserted in the Report. *See* TEX. R. EVID. 801(d). The question, therefore, is whether the statements were properly admitted into evidence under the business records exception to the hearsay rule when offered by the State as Dawson's Report. And, again, they clearly were not.

Contrary to subsection (A) of the business records exception, Dawson, the author of the Report, testified that he did *not* have personal knowledge of the facts of the violations listed in the Report, nor did he have knowledge of which rules were violated or when they were violated. *See* TEX. R. EVID. 803(6)(A); *Canseco v. State*, 199 S.W.3d 437, 440 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd) (stating that probation file is admissible as business record, even though testifying witness does not have personal knowledge of entries in file, "so long as the personnel who made the entries did have personal knowledge of the facts therein"). Moreover, both the questioning of Dawson by defense counsel and the testimony of appellant himself on cross-examination by the State indicate the lack of trustworthiness of the sources of the information in the Report. Dawson was unable to identify the sources or facts alleged as violations of the rules of the SAFPF program and could not rebut any of appellant's testimony controverting or placing in context these alleged violations.

22

*See* TEX. R. EVID. 803(6)(E) (providing that record is admissible as business record if, in addition to other requirements, opponent to admission of record "fails to demonstrate that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness"); *Philpot v. State*, 897 S.W.2d 848, 852 (Tex. App.—Dallas 1995, pet. ref'd) ("[E]vidence that qualifies under the business-records exception [to the hearsay rule] may still be excluded if the evidence does not have adequate indicia of trustworthiness."); *see also Porter v. State*, 578 S.W.2d 742, 746 (Tex. Crim. App. 1979) (holding, in capital murder case, that letters contained in defendant's federal parole file, which pre-dated charged offense, were not admissible under business records exception because letters "contain hearsay upon hearsay, as well as opinions regarding [the defendant's] mental and physical condition and his amenability to rehabilitation," sources of most opinions in letters were unnamed, "in no case are the authors or the unnamed sources shown to be competent to make the statements attributed to them," and despite being collected in government file, letters did not "have the indicia of reliability sufficient to insure the integrity of the fact finding process commensurate with the constitutional rights of confrontation and cross-examination").

Exhibit 4 and its use just as clearly violated the Confrontation Clause, as the contents of the Report were all out-of-court statements made by witnesses absent from trial and were all testimonial in that the circumstances indicate that they were

23

made for "the primary purpose" of "establish[ing] or prov[ing] past events potentially relevant to later criminal prosecution." *Langham*, 305 S.W.3d at 576 (quoting *Davis*, 547 U.S. at 822). Nor did appellant have a prior opportunity to cross-examine the unidentified persons with personal knowledge who reported the alleged violations indirectly to Dawson through team members in the phone call upon which appellant's expulsion from the SAFPF program was predicated. Appellant did not even have the opportunity to confront and cross-examine Dawson himself meaningfully as an adverse witness, since Dawson testified that he had no personal knowledge of the underlying historical facts upon which he based his report.

This procedure plainly disregarded the minimum due process requirements for revocation of both federal and state parole, probation, and community supervision specified in both *Morrissey* and *Scarpelli*: (a) written notice of the claimed violations; (b) disclosure to the probationer of the evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses; (e) a "neutral and detached" hearing body; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking probation or parole. *See Scarpelli*, 411 U.S. at 786; *Morrissey,* 408 U.S. at 489.

Finally, as both the United States Supreme Court and the Texas Court of Criminal Appeals have held, a revocation hearing—even in the context of revocation

24

of parole or probation following conviction for a crime, much less in the context of deferred adjudication in which there has been no conviction—is designed to apply a specific balancing procedure to achieve a specific public purpose:

> Even if a community-supervision violation is proven, *the trial court has the discretion to continue or modify the terms of community supervision rather than revoking it*, and the trial court has the discretion to make this determination *based on its weighing of policies, such as protecting the public and rehabilitating the offender*.

*Doan*, 369 S.W.3d at 212 (emphasis added); *see also Scarpelli*, 411 U.S.at 784–85 (stating that first step in revocation hearing is to determine whether defendant has in fact violated one or more conditions of probation or parole; if it is determined that he has, thrust of probation movement—keeping offenders in community and working to rehabilitate them—changes to interest in accurate finding of fact and informed use of discretion to ensure that probationer's or parolee's liberty is not unjustifiably taken and to make certain that State "is neither unnecessarily interrupting a successful effort at rehabilitation nor imprudently prejudicing the safety of the community"); *Morrissey*, 408 U.S. at 484 (stating that both parolee and society have "a stake in . . . restoring [an offender] to normal and useful life within the law" and interest in treating him with "basic fairness").

Here, there was patent and complete disregard of appellant's constitutional rights, even minimal ones, and, indeed, of the entire purpose of community supervision and deferred adjudication—namely, to ensure that a defendant's liberty

25

is not unjustifiably taken away and to make sure that the State is neither unjustifiably interrupting a successful effort at rehabilitation nor imprudently prejudicing the safety of the community. Here, there is no indication that the actual facts underlying revocation of appellant's community supervision were of any concern to the State or to the court; nor was any attention given to assuring appellant's rights or attempting to reach any result other than a summary dismissal of all obstacles to the swift adjudication of appellant's guilt and his sentencing to a long term in prison, whether the circumstances indicated that he could have been rehabilitated or not and regardless of whether he posed any threat to the community or not.

In short, the entire purpose of drug offender and other rehabilitative programs, as well as all constitutional protections for appellant, as the offender, was thrust aside at the revocation stage of the adjudication hearing; and the purpose of the SAFPF program was disregarded and undermined without regard to whether either appellant's rehabilitation or the community's safety was compromised thereby. I conclude that the procedure used to revoke appellant's community supervision, to adjudicate him guilty of the crime of aggravated robbery to which he had pleaded guilty, and to sentence him to prison on nothing more substantive than the fact of his guilty plea and his cursory revocation hearing violated appellant's due process rights.

## Conclusion

I would reverse the trial court's judgment and remand the case to that court for proceedings consistent with the purposes of community supervision and its revocation and with the minimum requirements of constitutional due process.


Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Lloyd, and Hightower.

Justice Keyes, concurring.

Publish. TEX. R. APP. P. 47.2(b).